**CITY OF KANSAS CITY, Missouri, Respondent,**

v.

**James E. CARTER, Jr., Appellant.**

**No. WD 30968.**

Missouri Court of Appeals, Western District.

Dec. 2, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 30, 1980.

Application to Transfer Denied Feb. 9, 1981.

James E. Carter, Jr., Kansas City, litigant pro se.

Aaron A. Wilson, City Atty., George L. DeBitetto, Asst. City Atty., Kansas City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The defendant James Carter pro se appeals from a circuit court conviction on a municipal information that he refused authorized agents of Kansas City access to books, papers and records in his possession or control to determine earnings tax due the municipality. The defendant refused the administrative order to inspect the records on a claim of self-incrimination under the Fifth Amendment to the United States Constitution. The court ruled the privilege did not apply and imposed a $100 fine and a 90-day jail sentence but suspended incarceration on condition that the defendant allow the municipal agents access to the records within ten days of judgment.

In the usual course, the Finance Department of Kansas City, Missouri, distributed to the defendant an Earnings & Profits Tax Return for year 1977 for completion. The

face of the return form described the business subject to tax and the enterprisers as:

Bed Sales & Serv
Carter James E Jr & Shirley
Cheshire Bed Co

The tax form was returned without responsive information. To each item [cost of goods, income, inventory, etc.] was the response *object—self-incrimination.* The form was filed under the signature of the defendant alone.[1] The inconclusive return and continued refusal of the defendant to allow municipal agents to inspect the business books and records to determine earnings tax liability prompted the municipal Director of Finance to an Order to Inspect Records directed to:

James E. Carter, Taxpayer
Cheshire Bed Company

at the Kansas City, Missouri address. The Order issued under § 32.157(e),[2] Revised Ordinances of Kansas City, and recited:

I hereby authorize my agent, D.G. McConnell, to examine all books, papers and records in your possession or control, excepting only Federal or State income tax returns, showing the following:

Gross Receipts, Cost of Goods Sold, Gross Profit, Other Earned Income, Business Expenses, Depreciation and Net Profit, to verify the accuracy of any Earnings Tax returns made by you for the calendar year 1977, or if no return was made to ascertain the tax imposed by Section 32.-140, Rev.Ord.K.C., Mo.

The order warned that failure to comply was made an offense punishable by fine or imprisonment under § 32.163 of the ordinances.

The defendant Carter continued to refuse access to the records notwithstanding the official Order, except on grant of immunity from prosecution—a benefice [he was informed] beyond the power of the municipality to confer.

■ The defendant Carter asserts the principle of *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) that any government reach for personal papers by compulsion for use in a criminal prosecution against that person intrudes upon the privacy of life so as to render the action an unreasonable search and seizure under the

1. The wife, Shirley, listed with the defendant as co-enterprisers, *did not join the execution of* the return. The form was returned to the city agency accompanied by a memorandum of legal citations as support for the contention of constitutional privilege against disclosure. The wife Shirley joined to sign that appendage. The official order to inspect the records was directed to the defendant alone so only his refusal was prosecuted.

2. In aid of earnings tax assessment, the ordinances grant the Director authority to examine records by two methods: by an order—such as issued—to direct examination of the books and records and the cooperation of the taxpayer to facilitate means and opportunity for the inspection [§ 32.157(e)] *or* by examination of the taxpayer under oath attended by the *compelled production* of the papers. [§ 32.157(f)] The municipality and pro se defendant describe the official action, variously, as an order to produce documents or simply to allow inspection. The rationale of opinion renders the distinction irrelevant. In terms of legal principle, however, the difference bears vitally on whether the Fifth Amendment privilege against self-incrimination avails. The first method under the ordinance [used against the defendant Carter] resembles the detection of information from papers seized under warrant issued upon probable cause. The most recent authority determines that no claim of the Fifth Amendment

privilege can arise from a *seizure* of private papers under the Fourth Amendment. *Andresen v. Maryland,* 427 U.S. 463, 474[7], 96 S.Ct. 2737, 2745, 49 L.Ed.2d 627 (1976). That is because the Fifth Amendment is a personal privilege: "it adheres basically to the person, not to information that may incriminate him." *Couch v. United States,* 409 U.S. 322, 328[6–8], 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973). A *claim of the Fifth Amendment privilege, however, can arise*—albeit improbably—from the *compelled production* under the Fourth Amendment of private papers where the very act of production constitutes an incrimination. *Fisher v. United States,* 425 U.S. 391, 409[13–14], 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976); McKenna, *The Constitutional Protection of Private Papers: The Role of a Hierarchical Fourth Amendment,* 53 Indiana Law Journal 55, 59 (1977); Notes, *Formalism, Legal Realism and Constitutionally Protected Privacy Under the Fourth and Fifth Amendments,* 90 Harv.L.Rev. 945, 974 et seq. (1977). The compelled production of documents [the second method under the ordinance] was not employed against the defendant Carter. Our opinion determines that the papers kept by the defendant Carter—and which the official order probes—were *public,* not *private,* and so beyond constitutional privilege altogether.

Fourth Amendment and a self-incrimination under the Fifth Amendment. That convergence of constitutional principle, however, after almost a century of continuous adherence was questioned first in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), then again in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and all but dispelled in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Ritchie, *Compulsion That Violates the Fifth Amendment: The Burger Court's Definition*, 61 Minn.L.Rev. 383 (1977). The evolved rationale ends the interplay between the Fourth Amendment and the Fifth Amendment so that a violation of one amendment must be established independently of the other—according to the value protected. *Andresen v. Maryland*, supra, l.c. 475[8–9], 96 S.Ct. at 2745. The Fifth Amendment protects the person against compelled self-incriminating *testimony* and not against the *disclosure* of private information. *Fisher v. United States, supra,* l.c. 399[3], 96 S.Ct. at 1575. Thus, the seizure under warrant or the commanded production of private records voluntarily inscribed and kept do not violate the Fifth Amendment because there was no compulsion to speak or write—that is, there was no *testimonial* crimination. *Andresen v. Maryland,* supra, l.c. 472[4], 96 S.Ct. at 2744; Comments *A Paper Chase: The Search and Seizure of Personal Business Records,* 43 Brooklyn L.Rev. 489 (1976). Only where the production of a document amounts to a *testimonial* communication, therefore, does the Fifth Amendment—even absent a Fourth Amendment violation—operate to protect the content on grounds of self-incrimination. *Fisher v. United States,* supra, l.c. 409, n.11,[3] 96 S.Ct. at 1580 n.11. In practical terms, only the Fourth Amendment remains to protect against government intrusion upon the privacy of personal papers.

The pro se defendant invokes only the Fifth Amendment to protect him from that incrimination of the business records, but he does not draw himself within even the principle. The Fifth Amendment grants a personal privilege: it protects a born person [*Couch v. United States*, 409 U.S. 322, 328[6–8], 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973)] not an artificial person such as a corporation [*Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911)] or a partnership or the component partners [*Bellis v. United States*, 417 U.S. 85, 88[3–5], 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974)], or an individual who holds the records as custodian [*United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)]. The papers and effects which the privilege protects must be *the private property* of the person who claims the privilege, or who, at least, possesses in a purely personal capacity. *Bellis v. United States*, supra, l.c. 90[5], 94 S.Ct. at 2184.

The record does not inform of the status by which the pro se defendant claims the benefit of the Fifth Amendment. The defendant merely moved the dismissal of the citation to enforce access to the business records on a motley array of citations and principles derived from *Boyd v. United States,* supra, and since superseded. The evidence on the motion merely presented the testimony of the municipal revenue agents—their attempts to reach the business books to verify the inconclusive return made by the pro se defendant, his refusals, the formal Order from the Director to the defendant, and the continued refusal by the pro se defendant. The defendant offered no evidence as to the nature of the business enterprise, the ownership, or proof that the interest asserted in the papers was personal

---

**3.** The evolved rule restricts the Fifth Amendment protection of private papers to that solitary instance where "Government has compelled the subpoenaed person to write the document . . . ." *Fisher v. United States*, supra, l.c. 409, n.11, 96 S.Ct. at 1580 n.11. The compelled document is distinguished from the *re-* quired document rule, later explicated, upon which we rest decision. See, *Marchetti v. United States*, 390 U.S. 39, 55, 88 S.Ct. 697, 706, 19 L.Ed.2d 889 (1968); McKenna, *The Constitutional Protection of Private Papers: The Role of a Hierarchical Fourth Amendment*, 53 Indiana L.J. 55, 66, n.5.

rather than custodial or collective. That alone, defeats a claim to the protection of the Fifth Amendment from the criminatory effect of those documents and entries. *Bellis v. United States*, supra, l.c. 88[3–5], 94 S.Ct. at 2182; *Fisher v. United States*, supra, l.c. 411, 96 S.Ct. at 1581.

There remains another conclusive reason to deny the pro se defendant the effect of the Fifth Amendment privilege against access to the personal business records—even were a personal interest to assert that protection assumed. The Order of the Director reaches for disclosure of no more than entries required by law to be kept. The statutes provide that for purposes of income tax [§§ 143.011 to 145.995] returns shall be made by every resident or nonresident with prescribed earnings [partnerships, individuals and corporations included] according to the method of accounting used for federal income tax purposes. The statutes provide that for the sales tax any business for profit shall keep "such records and books as may be required by Title 26, the United States Code, for federal income tax purposes." § 144.320, Mo.Supp. Laws 1977. The statutes also provide that for merchants tax [§ 150.050], manufacturers tax [§ 150.320] and other assorted purposes, the payer submit reports to the tax authority of the business inventory subject to regulation. These enactments provide also for examination and inspection of the taxpayer records to authenticate the sum due for collection. §§ 143.571, 144.330, 144.640, 150.055 and 150.325. The code of general ordinances of Kansas City does not prescribe a duty to keep records for the earnings tax. That duty, however, is otherwise prescribed by law. The *books, papers and records ... showing the gross receipts, cost of goods sold, gross profit, other earned income, business expenses, depreciation and net profit* the Order of the Director describes are none other than the law otherwise—and particularly income tax § 144.320 and Title 26, United States Code—requires to be kept by an income tax payer. A reasonable enactment, such as ordinance §§ 32.157(e) and (f), by a municipal or other tax authority for the grant of inquisitorial power to determine the accuracy of returns does not conflict with the Fourth Amendment or Fifth Amendment clauses. *Kirkwood Drug Company v. City of Kirkwood*, 387 S.W.2d 550, 554[3] (Mo. 1965); *Ploch v. City of St. Louis*, 345 Mo. 1069, 138 S.W.2d 1020, 1024[12] (banc 1940).

■ A taxpayer who keeps records pursuant to provisions of law becomes custodian for that governmental purpose, so that the papers assume a public aspect and the taxpayer has no interest to assert the Fifth Amendment constitutional privilege as to them. *Wilson v. United States*, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1910). The rationale of the *required records* doctrine is given [*Shapiro v. United States*, 335 U.S. 1, 17, 68 S.Ct. 1375, 1384, 92 L.Ed. 1787 (1948)]:

> " 'The principle applies not only to public documents in public offices, but also to *records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained.*' "

In such circumstance "the custodian has voluntarily assumed a duty which overrides his claim of privilege." *Davis v. United States*, 328 U.S. 582, 589, 66 S.Ct. 1256, 1259, 90 L.Ed. 1453 (1946). The pro se defendant shows no valid assertion of the Fifth Amendment privilege against access of the records by the municipal revenue agents. That ground of appeal fails.

The pro se brief attempts other grounds of error. They are without merit. One of them, that the court failed to inform him of the right to counsel is contradicted by the plain record. The court offered to inquire into the indigency of the defendant to determine whether he qualified for appointed counsel, but the defendant preferred other consultation. The assortment of other grounds asserted as error, to the extent

they are discernible, are also without substance and give no basis for appellate relief.

The judgment is affirmed.

All concur.