STATE of Missouri, Respondent,

v.

Landis CAREY, Appellant.

Landis CAREY, Appellant,

v.

STATE of Missouri, Respondent.

No. 56949, 58223.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 12, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 16, 1991.

Application to Transfer Denied
June 11, 1991.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Kathleen G. Green, Asst. Public Defender, Jefferson City, for appellant.

SIMON, Judge.

Appellant Landis Carey was convicted after a jury trial of one count of first degree sexual abuse, Section 566.100, RSMo.1986, and sentenced as a prior and persistent offender to six years imprisonment. He also appeals the denial of his Rule 29.15 motion without an evidentiary hearing.

The facts adduced at trial, viewed in the light most favorable to respondent, revealed the following. The victim, L.B., was five years old on March 31 and April 1, 1988. She lived with her mother, B.D., and two of her brothers. B.D. and appellant were friends, and occasionally appellant would stay in B.D.'s home.

On the evening of March 31, 1988, appellant spent the night at B.D.'s home. B.D. slept on the sofa in the front room, while L.B. slept in her bed in another room. Appellant was to sleep on a mattress in the front room. B.D. woke up at some point, and heard L.B.'s bed squeaking. She got up to investigate, and saw appellant jump off of L.B., cover her up, and run. Appellant was zipping his pants up as he hurried to the bathroom. B.D. pulled the cover on L.B. back, and saw L.B.'s nightgown up to her navel and her panties down to her ankles.

B.D. caught up to appellant, who said he was checking to see if water was running. B.D. had L.B. dress and sent the child to go get a neighbor. The neighbor, Joseph Phillips, testified L.B. had come to get him. B.D. asked L.B. to tell Mr. Phillips what happened, and she said appellant had "messed with her." Appellant escaped before the police and emergency medical service personnel arrived. B.D. talked with the police, but decided to take L.B. to the hospital herself. B.D. needed money for the trip, so she took L.B. and went to her mother's (P.B.'s) place of employment.

After getting money from her mother, B.D. took L.B. to Cardinal Glennon Children's Hospital in St. Louis. Dr. Michael Shaw testified he examined L.B. and discovered redness in the cervical os, and a torn hymen. He stated that for the cervical os to have redness, it must have been traumatized. Dr. Shaw found no evidence of sperm. He concluded L.B. was a victim of a recent sexual attack.

Dr. John Brewer examined L.B. on May 24, 1988. He found several scars around L.B.'s hymen and cervix, which he stated were caused by an "expanding force," such as a finger or penis inserted into the area. Dr. Brewer testified that, in his opinion, L.B. had been sexually abused, although he could not say precisely when. At trial, appellant's defense was alibi, i.e., he did not sleep at victim's home on the evening

of March 31, 1988. Appellant did not testify. Other facts will be adduced as necessary to address appellant's points.

Appellant presents four points on appeal: (1) The trial court abused its discretion in giving MAI–CR3d 312.10, the "hammer" instruction, and following it with the statement, "would you retire and decide this case," which he said in a threatening manner, as the instruction and his threatening comment had the effect of coercing the two dissenting jurors into agreeing with the majority and ignoring the "reasonable doubt" standard of proof; (2) the trial court erred in permitting a defense witness, Juan Wilborn, to plead the fifth amendment right to not incriminate oneself, and refuse to answer questions regarding whether the state's witness B.D., had told him she was lying in her accusation of appellant, and regarding his and B.D.'s involvement in a stealing from appellant in 1985 and regarding his viewing of a man who was not appellant committing sexual acts in front of L.B.; (3) the trial court erred in admitting the statements of B.D., P.B., Tish Larock and Anne Clifford, wherein they testified as to the out-of-court statements made to them by L.B., for the statements should not have been admissible under Section 491.075, RSMo.1986; and, (4) the motion court erred in denying appellant's 29.15 motion without an evidentiary hearing because appellant alleged facts which if true would warrant relief, the facts alleged raise matters which are not refuted by the record, and the matters complained of resulted in prejudice to appellant's defense, in that trial counsel failed to ensure that the "hammer" instruction and statements surrounding it were properly recorded, and that counsel failed to call an essential alibi witness to testify at trial.

Appellant first asserts the trial court abused its discretion in giving MAI–CR3d 312.10, the "hammer" instruction, followed with the statement, "[w]ould you retire and decide this case," because the jury was then forced to abandon the "reasonable doubt" standard of proof.

The trial court has broad discretion in deciding whether or not to give the hammer instruction. *State v. Edwards*, 712 S.W.2d 412, 414[3] (Mo.App.1986). Appellant must establish, based upon the record, that the jury was coerced into reaching its verdict. *Id.* The mere fact a verdict is returned shortly after the "hammer" instruction is given is not proof of jury coercion. *State v. Hyzer*, 729 S.W.2d 576, 578[5] (Mo.App.1987). The record reflects only the following occurrences. The jury began deliberations at 3:30 p.m. At 8:15 p.m. the jury returned to the courtroom, and the court read them MAI–CR3d 312.10. The court then stated, "Would you retire and decide this case." The jury returned its verdict at 9:50 p.m. Appellant argues in his brief that the court's statement, "[w]ould you retire and decide this case[,]" was said in a "loud and threatening tone," thus implying that the jury had to reach a verdict or the trial court would keep them there all night. Appellant further states as proof of coercion the fact that appellant was charged with sodomy, but the jury only convicted him of first degree sexual abuse, which was "obviously" a compromise. None of these arguments are supported by the record. As such, they are pure conjecture, which we cannot consider. *See State v. Phillips*, 596 S.W.2d 752, 755, n. 1 (Mo.App.1980).

We find no evidence of coercion on the jury's part. We note MAI–CR3d 312.10 contains the phrase, ". . . no juror should ever agree to a verdict that violates the instructions of the court, nor find as a fact that which under the evidence and his conscience he believes to be untrue." The instruction ". . . urges open and frank discussion, tolerance, and desirability of a unanimous verdict, but cautions against basing a verdict on evidence he does not believe is true." *State v. Smith*, 686 S.W.2d 43, 46 (Mo.App.1985). The fact that the jury deliberated one hour and thirty-five minutes after the court read MAI–CR3d 312.10 indicates careful review of the evidence, not a hurried compromise. Point I is denied.

In his second point appellant argues the trial court erred in permitting a defense

witness to invoke his privilege against self-incrimination and refuse to answer questions concerning the victim's mother's involvement in stealing from appellant, her lying in her accusation of appellant, and the witness' seeing someone besides appellant commit sexual acts in the victim's presence.

A hearing on the matter was held without the jury's presence. At the hearing, trial counsel stated that at trial appellant intended to call Juan Wilborn to the stand. Appellant expected Mr. Wilborn to testify to three incidents. First, Mr. Wilborn was expected to testify that in April, 1988, the victim's mother, B.D., told him she lied about appellant's involvement in the crime for which he was tried, and that she was "putting a case" on appellant. He was also expected to testify that in 1985 B.D. stole money from appellant and offered Mr. Wilborn a share if he protected her from appellant. Lastly, appellant expected Mr. Wilborn to testify he saw B.D.'s brother perform a sexual act in front of the victim.

Mr. Wilborn's attorney was present at the hearing, and stated Mr. Wilborn wished to invoke his Fifth Amendment privilege against self-incrimination, as he had an identical charge pending against him, involving a young girl, but not the victim in this case. The court allowed Mr. Wilborn to confer privately with his attorney. The trial court then required Mr. Wilborn's counsel to make a statement on the record. Counsel stated that after talking with Mr. Wilborn she believed he had a legitimate reason not to want to testify in this case.

Shortly thereafter proceedings returned to open court. When asked if B.D. told him she was lying in her accusation of appellant, Mr. Wilborn asserted his Fifth Amendment privilege and was excused.

■ The privilege against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. The privilege protects an individual from being an involuntary witness against himself in any proceeding, criminal or civil, formal or informal, where his answers might incriminate him in future criminal proceedings. *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 768 (Mo. banc 1987). The privilege extends not only to answers that would completely reveal guilt of a crime, but also to questions whose answers might reveal facts which could be a link in a chain of evidence connecting him to a crime. *Id.; State ex rel. Flynn v. Schroeder*, 660 S.W.2d 435, 437[4] (Mo.App.1983). An individual asserting the privilege may refuse to answer incriminating questions, and may also refuse to explain how the answers might incriminate him. *State v. Ruff*, 729 S.W.2d 556, 560[11] (Mo.App. 1987).

■ Once a witness invokes the privilege against self-incrimination, a rebuttable presumption arises that the answer might tend to incriminate him. *McKelvey*, 733 S.W.2d at 768. The party wishing to call the witness may rebut the presumption by demonstrating that the answer cannot possibly tend to incriminate the witness. *Id.* The trial court can compel the witness to answer only after it finds, as a matter of law, that the response cannot possibly tend to incriminate. *Schroeder*, 660 S.W.2d at 437. The trial court is given wide latitude in this determination. *State v. Sidebottom*, 753 S.W.2d 915, 922[15] (Mo. banc 1988), *cert. denied* 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988); *State v. Loggins*, 698 S.W.2d 915, 918[1] (Mo.App.1985). We review only for an abuse of that discretion. *State v. Berry*, 658 S.W.2d 476, 480 (Mo.App.1983).

■ Appellant argues the trial court erred in allowing Mr. Wilborn to invoke the privilege against self-incrimination for two reasons. First, appellant asserts the trial court erred in its decision because there was no evidence implicating Mr. Wilborn in this case, and he therefore could not incriminate himself. Second, appellant claims Mr. Wilborn could not incriminate himself as to a theft because the statute of limitations had run.

Appellant ignores the fact that his defense in his own case was alibi, and that someone else committed the crime. While appellant's counsel stated he was not going

to "point the finger" at Mr. Wilborn, that is not enough to rebut the presumption that his testimony could not possibly incriminate him. The same is true of any testimony concerning Mr. Wilborn's seeing a third person commit a sexual act in front of the victim, and the fact that the statute of limitations has run on any alleged theft is not enough.

"Although only [the witness] can know what his answers would have been, . . . it is possible to imagine a scenario where incriminating evidence would be revealed by answering these questions . . . [.]". *Schroeder*, 660 S.W.2d at 437. We are not able to say as a matter of law that Mr. Wilborn could not possibly incriminate himself by his expected testimony in this case. Thus, we find no abuse of discretion.

■■■■ We note that appellant's claim, presented for the first time in the argument section of his brief, that the trial court erred in failing to hold a hearing before allowing Mr. Wilborn to assert his Fifth Amendment privilege, is not preserved for review because it was not raised at trial and because it is not contained in his Point Relied On. *State v. Stidum*, 684 S.W.2d 448, 450[2] (Mo.App.1984); *State v. Mooney*, 714 S.W.2d 216, 218[1] (Mo.App. 1986). In this case, a hearing is not required. All the trial court is required to do is make an adequate record that the privilege against self-incrimination will be invoked by some reliable and certain means. *Loggins*, 698 S.W.2d at 918. We find no error.

Appellant next asserts the trial court erred in allowing B.D., P.B., Tish LaRock, and Detective Anne Clifford to testify to the victim's statements for two reasons. First, appellant argues the statutory authority for admissibility of such statements, Section 491.075 RSMo.1986, is unconstitutional as violative of the confrontation clause. Second, appellant asserts admission of the testimony was error because it was repetitive, constituting improper enhancement and rehabilitation of the state's witnesses.

■■■■ The issue of Section 491.075's constitutionality has been addressed and re-

jected in *State v. Wright*, 751 S.W.2d 48 (Mo. banc 1988), followed by this court in *State v. Bereuter*, 755 S.W.2d 351 (Mo.App. 1988). *See also State v. Williams*, 729 S.W.2d 197 (Mo. banc 1987). Appellant's invitation to re-examine *Wright* and *Bereuter* is declined. We should comment, however, that the victim testified, giving appellant the opportunity to confront and cross-examine her on her statements.

■■■■ We initially note that any complaint appellant has with respect to B.D.'s or Tish LaRock's testimony is not preserved for review because no objection was made at trial. *Stidum*, 684 S.W.2d at 450. We shall *ex gratia* review appellant's point in full.

■■■■ Before trial a hearing was held on appellant's motion to exclude L.D.'s out-of-court statements to B.D., P.B. and Tish LaRock. The court overruled the motion. B.D. testified at trial she heard L.B. tell Joseph Phillips, a neighbor, that appellant got on top of her, pulled her panties down, held her arms down, and "stuck something black up in her." P.B., the victim's grandmother, testified she saw L.B. on April 1, 1988. She noticed L.B. had a bruise on her arm and asked the child what happened. B.D. was not present. L.B. told her grandmother that appellant "messed with her down below," using a "hard black thing." P.B. went to B.D.'s home later and talked with L.B. again, who repeated "it was a hard black thing." Detective Anne Clifford testified she interviewed L.B. on April 1 at Cardinal Glennon. Detective Clifford stated she asked L.B. if anything happened that she did not like. L.B. replied that appellant pulled her panties down and "hurt" her, grabbed her shoulders and told her to be quiet, and tried to get her to go into the kitchen.

Tish LaRock, a pediatric nurse with the Sex Abuse Management Clinic at Cardinal Glennon, interviewed L.B. on May 24, 1988. Ms. LaRock, using anatomically correct dolls, asked if anyone had touched her in her "private" area. L.B. named appellant. Ms. LaRock asked L.B. what happened. L.B. said she was sleeping and appellant

came in and started to kiss her, and got in bed with her. It happened in her bedroom. Appellant pulled her panties down and asked her to go to the kitchen with him. She somehow indicated she did not want to, and appellant pulled his pants down. Ms. LaRock asked what happened, and L.B. replied he "hurt" her. When asked where, L.B. pointed to her vaginal area. Ms. LaRock asked if this happened one time or many times, and L.B. said many times. Ms. LaRock asked if L.B. was touched outside or inside her panties, and L.B. said inside. Ms. LaRock then asked L.B. if she was touched outside or inside her body. L.B., using the dolls, pointed to the inside.

Appellant argues the statements should not have been admitted because they were cumulative and amounted to improper rehabilitation and bolstering. The trial court has considerable discretion in determining the reliability and admissibility of a child victim's out-of-court statements. *State v. Potter*, 747 S.W.2d 300, 305[12] (Mo.App. 1988). Appellant's reliance on *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), is misplaced. The testimonies of B.D., P.B., Ms. LaRock, and Det. Clifford were not entirely duplicative. Each witness described the circumstances surrounding L.B.'s statements to them. The statements, therefore, had probative value apart from the victim's testimony. *State v. Culkin*, 791 S.W.2d 803, 809[9] (Mo.App.1990). Point III is denied.

Appellant's fourth and final point asserts the motion court erred in denying his Rule 29.15 motion without a hearing. He asserts the motion raised two facts not refuted by the record which would warrant relief: (1) trial counsel was ineffective because he failed to record the hammer instruction and statements surrounding it, and (2) counsel was ineffective in failing to call an alibi witness.

▆▆▆▆ It is elementary that we are limited in a Rule 29.15 proceeding to determining whether the findings, conclusion, and judgment of the motion court are clearly erroneous. *State v. Williams*, 784 S.W.2d 309, 314 (Mo.App.1990). Appellant must show that his attorney failed to pro-

vide reasonably competent assistance, and the defective assistance was prejudicial. *Id.* In order for us to conclude the error was prejudicial, appellant must show that but for counsel's ineptitude, the outcome of the trial would have been different. *State v. Fitzpatrick*, 676 S.W.2d 831, 836[14] (Mo. banc 1984). To be entitled to an evidentiary hearing on a Rule 29.15 motion, one must plead facts, not conclusions, unrefuted by the record, which if true would warrant relief. *State v. Fraction*, 782 S.W.2d 764, 769 (Mo.App.1989).

▆▆▆ Appellant's verified amended motion alleges his trial counsel was ineffective in failing to record, and thus preserve for review, the "hammer" instruction and the statements surrounding it. He argues this failure led to a discrepancy in the record, because trial counsel "states the court said one statement and the record reflects another." Appellant asserts he was prejudiced because the trial court's statement and the tone of his voice was not made a part of the record, thus preventing him from presenting facts unrefuted by the record which would entitle him to relief.

Appellant charges in his brief that had he been granted an evidentiary hearing he would have introduced trial counsel's testimony that the trial court, after reading the "hammer instruction," stated, "[n]ow you all go back there and reach a verdict," in a "loud and threatening tone." The record, however, reflects that the court said, "Would you retire and decide this case."

In any event appellant has not demonstrated the outcome of his trial would have been different but for trial counsel's failure to make a complete record of the statements and circumstances surrounding the giving of the "hammer" instruction. Viewing the circumstances in their totality, as we must, *see State v. McNail*, 767 S.W.2d 84, 86 (Mo.App.1989), we do not find sufficient evidence of juror coercion. In addition to the reasons we cited in Point I, we note the trial court did not in any way suggest he would keep them there all night, tell them to hurry, or otherwise pressure the jury. *Cf. State v. White*, 782 S.W.2d 461, 466 (Mo.App.1990); *McNail*, 767 S.W.2d at 86.

Appellant also asserts his trial counsel was ineffective in failing to call Minnie Collins as a witness. He alleges in his amended motion Ms. Collins would have testified appellant was with her husband on the evening of March 31, 1988, and thus could not have committed the crime for which he was convicted.

Selection of witnesses is a matter of trial strategy, *Morrow v. State*, 782 S.W.2d 788, 791[3] (Mo.App.1989), and trial strategy is not a foundation for finding ineffective assistance of counsel. *Driscoll v. State*, 767 S.W.2d 5, 9[4] (Mo. banc 1989), *cert. denied* —— U.S. ——, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989).

Here, the defense was alibi. Ms. Collins' husband, Willie Stafford, testified. He stated that on March 31, 1988, he picked appellant up near B.D.'s home after work. They got some beer, and went to bars and people's houses intermittently during the evening. After the bars closed they went to Mr. Stafford's home. Ms. Collins was home, awake. Mr. Stafford testified appellant slept on the sofa in the living room, and that he saw appellant all weekend.

Appellant asserts that had Ms. Collins testified, she would have corroborated her husband's testimony. We find no prejudice in counsel's decision not to call Ms. Collins. The only allegation that trial counsel was aware of her was in appellant's brief. Assuming counsel was aware of her existence and testimony, the most she would have testified to was appellant's presence when her husband came home in the late evening or early morning of March 31 or April 1, and throughout the weekend. Such testimony is merely cumulative of Mr. Stafford's testimony, and the failure to present it is not ineffective representation. *State v. Fitzgerald*, 781 S.W.2d 174, 188[15] (Mo. App.1989).

The judgment is affirmed.

CRANDALL, C.J., and CRANE, J., concur.