STATE of Missouri, ex rel., Robert R. LONG, et al., Valoree Maycock, Rudy Beretta, Daniel Cobb, Mike Harrison, and Larry Wims, Relators,

v.

The Honorable Kenton ASKREN Associate Circuit Judge Saline County Circuit Court, Respondent.

No. WD 47793.

Missouri Court of Appeals, Western District.

March 1, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1994.

467

James D. Worthington, Lexington, for relator Robert R. Long.

L. Clay Barton, Oak Grove, for relators Karrt Wims and Daniel Cobb.

George W. Lehnen II, Richmond, for relator Mike Harrison.

Vincent F. O'Flaherty, Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

ULRICH, Judge.

Robert R. Long seeks this court's writ of prohibition prohibiting The Honorable Kenton G. Askren, Associate Circuit Judge, Cooper County, from compelling Mr. Long to testify and to produce records as a judgment debtor at an examination pursuant to section 513.380, RSMo 1986, and Rule 76.27. Mr. Long asserted his Fifth Amendment, U.S. Constitution, and Article I, § 19, Missouri Constitution, rights against self-incrimination.[1] Additionally, Valoree Maycock, Rudy Beretta, Mike Harrison, Larry Wims, Daniel Cobb, and Robert R. Long, seek this court's writ of prohibition prohibiting The Honorable Kenton G. Askren from requiring their appearance and testimony as third party relators at the debtor's examination of Robert R. Long.

Three issues are presented for determination. They are whether the trial court erred: (1) in attempting to compel Robert R. Long, judgment debtor, to answer questions posed by the judgment creditor at a statutory debtor's examination pursuant to section 513.380, in violation of Mr. Long's constitutional

---

1. Judge Askren sits in this case in Saline County by special assignment of the Chief Justice of the Supreme Court of Missouri.

rights pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article I, § 19 of the Missouri Constitution; (2) in compelling Robert R. Long to produce personal records by subpoena duces tecum, issued at the request of the judgment creditor, at the statutory debtor's examination and thereby exceeded jurisdiction granted by sections 513.380 and 513.390, RSMo 1986, and violated Mr. Long's right against self-incrimination pursuant to Article I, § 19 of the Missouri Constitution and the Fifth and Fourteenth Amendments of the United States Constitution; and (3) in compelling the attendance of the third party relators at the debtor's examination of Robert R. Long, and thereby exceeded jurisdiction granted by section 513.380, RSMo 1986, and Supreme Court rule 76.27.[2]

The legal file discloses that Robert R. Long was employed by U.S. Water Company (U.S. Water) from December 20, 1983, until December 19, 1991, as vice president and manager. U.S. Water was in the business of supplying water to the residents and businesses of Lexington. As manager of the company, Mr. Long supervised the day-to-day business of the company and had depository and signature authority on one of the two bank accounts of U.S. Water at the Lafayette County Bank.

U.S. Utilities Management and Services, Inc. (U.S. Utilities), is a company whose business was to pay the operating expenses and other fees incurred by U.S. Water's daily operation. As part of Mr. Long's duties as manager of U.S. Water, he had depository and signatory authority of U.S. Utilities' bank account at the Lafayette County Bank.

During the time that Mr. Long was employed by U.S. Water, he was also a shareholder, director, and President–Treasurer of Computerized Billing Service, Inc. (CBS). As Treasurer of CBS, Mr. Long maintained the company's checking account and financial records. Mr. Long's duties and responsibilities with CBS included entering or directing the entry of billing and revenue information into the computer files of U.S. Water and CBS. U.S. Water paid CBS for work performed in its behalf. In 1991, U.S. Water was owned by Charles Schleicher who also owned fifty percent of the stock in CBS. Mr. Long owned twenty-five percent of CBS's stock in 1991. CBS billed the customers of U.S. Water for products received and services rendered. U.S. Water, CBS and U.S. Utilities conducted business at the same address in Lexington.

On December 19, 1991, Mr. Long was discharged from his employment with U.S. Water. Mr. Long refused to leave U.S. Water's office and removed property and documents from U.S. Water's office over the objections of the President of the company.

Sometime in early 1992, Mr. Long filed suit against CBS, U.S. Water, and others in several counts and obtained an ex parte temporary restraining order. Although the document is not provided, apparently defendants U.S. Water, CBS, and U.S. Utilities counterclaimed. On September 17, 1992, the day trial began, Mr. Long dismissed his first amended petition which included the claim for injunctive relief.

On December 10, 1992, judgment was entered in the circuit court of Saline County in favor of defendants and against Robert R. Long on all counts of "defendant's [sic] second amended counterclaim." The trial court also found that Mr. Long's application for a temporary restraining order was an "unwarranted and unconscionable use of the legal process." The court found that while employed by U.S. Water and U.S. Utilities, and as an officer, director and shareholder of CBS, Mr. Long misappropriated funds; made fraudulent misrepresentations to his employer; wilfully, intentionally, and maliciously caused financial loss to the named defendants; and refused to return personal property belonging to the defendants. As part of the judgment awarded to U.S. Water, CBS and U.S. Utilities awarded against Mr. Long, the Circuit Court of Saline County entered judgment for actual damages in the

---

**2.** Mr. Long claims that the trial court's effort to compel him to answer questions at the debtor's examination and to require him to produce subpoenaed records breached the Eighth Amendment of the United States Constitution. Mr. Long's brief did not address these contentions, and they are abandoned.

sum of $164,170.72, punitive damages in the sum of $14,775.41, plus more than $23,000 in attorney's fees. The judgment included a constructive trust of three vehicles totaling a value of more than $42,000.

During the pendency of that suit, extensive discovery occurred. Interrogatories and a request for production of documents were submitted to Mr. Long by defendants. Additionally, Mr. Long's deposition was taken twice. Mr. Long objected to five of the fifteen interrogatories submitted to him, and he did not object to any of the requests for production of documents. Mr. Long did not assert his Fifth and Fourteenth Amendment to the United States Constitution and Article I, § 19 of the Missouri Constitution provisions against self-incrimination to any of the questions asked in interrogatories submitted to him, as a response to the request for production of documents, or during his first deposition. During Mr. Long's second deposition which was taken on September 15, 1992, when asked whether he had married since the last deposition, Mr. Long, for the first time, declined to answer any questions propounded to him by counsel for defendants in the case then pending, asserting for the first time his rights against self-incrimination pursuant to the United States and Missouri Constitutions.

On January 26, 1993, Mr. Long filed his Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Western District of Missouri. The bankruptcy petition purported to detail Mr. Long's financial holdings and status as a debtor as of the date of filing. On March 15, 1993, the bankruptcy petition was dismissed by the court.

The judgment creditors obtained an order of execution on the judgment entered December 10, 1992, and unsuccessfully attempted to locate assets belonging to Mr. Long and subject to execution. Pursuant to section 513.380, RSMo 1986, the judgment creditors attempted to examine Mr. Long at a judgment debtor's examination on April 22, 1993. The judgment creditors caused Mr. Long to be served with a subpoena duces tecum which attempted to compel him to bring certain documents to the hearing for production into evidence. Mr. Long, through counsel, attempted to quash the subpoena by motion, and the motion was denied.

In anticipation of the debtor's examination hearing on April 22, 1993, the judgment creditors subpoenaed third parties Valoree Maycock; Rudy Beretta; and Larry J. Wims in his capacity as the Vice President of the Commercial Bank of Oak Grove; and Daniel Cobb, Assistant Vice President of the Bank of Odessa, to appear at the debtor's examination hearing. Each of the third parties filed motions to quash the subpoena with which each was served. The motions were denied. Mr. Long filed a motion to quash each of the subpoenas of the third parties, and his motions were denied, also.

Mr. Long was asked numerous questions at his judgment debtor's examination on April 22, 1993. Mr. Long declined to answer virtually every question asked by counsel for the judgment creditors during the examination and asserted as authority for his refusal his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution, and Article I, § 19, Constitution of the State of Missouri, "[d]ue to the continuing investigation by the FBI and the U.S. Attorney in Kansas City." The court continued the judgment debtor examination of Mr. Long to May 14, 1993, and directed Mr. Long to appear on May 14 and to produce documents pursuant to the subpoena duces tecum served upon him by judgment creditors or to show cause why he should not be held in contempt of court.

The judgment creditors requested sanctions against Valoree Maycock, Rudy Beretta, Carl Fallman, and Mike Harrison, upon the court's finding that these witnesses failed to appear on April 22, 1993, pursuant to subpoena. The court imposed sanctions.

On May 11, 1993, Relators Robert R. Long, Valoree Maycock, Rudy Beretta, Daniel Cobb, Mike Harrison, and Larry Wims, filed their petition for writ of prohibition. On the 12th day of May, 1993, this court issued its alternative writ of prohibition enjoining Respondent from further action pursuant to his order of April 22, 1993, except to vacate and set aside said order.

On June 2, 1993, Mr. Long appeared in United States District Court, Western District of Missouri, in criminal case styled *United States of America*, Plaintiff, vs. *Robert Richard Long*, Defendant, case No. 93–00084–1–CR–W–8. Mr. Long entered a plea of guilty to bank fraud. While stating a factual basis for his plea of guilty, Mr. Long acknowledged obtaining in excess of $62,000 by false and fraudulent pretenses and representations from the judgment creditors now parties in this case.

On August 11, 1993, the Respondent filed two supplemental exhibits in this case. They included a copy of the information filed on June 2, 1993, in the United States District Court, Western District of Missouri, by the United States Attorney for the District, charging Relator Robert R. Long with bank fraud in violation of 18 United States Code section 1344. The information alleges that in furtherance of the scheme to defraud three banks insured by the Federal Deposit Insurance Corporation, Mr. Long executed "a scheme to obtain moneys and funds under the custody and control [of the said banks] ... by false and fraudulent pretenses and representations." The information also states various ways that Mr. Long, because of the positions he held with U.S. Water and CBS, fraudulently obtained funds from or belonging to U.S. Water and CBS and used the funds for his benefit. The information asserts that Mr. Long obtained in excess of $62,645.60, to which he was not legally entitled, as a result of the fraudulent scheme.

The second supplemental exhibit filed with this court is a copy of a plea agreement filed with the United States District Court, Western District of Missouri, and signed by Mr. Long and the attorney representing him in the federal criminal case. In the agreement, Mr. Long agrees to plead guilty to the one count information. The agreement states that Mr. Long admits "the allegations set forth in the information" filed with the United States District Court. The agreement further states that "the amount of the loss incurred by the victims, United States Water, Inc., (U.S. Water Company) and Computerized Billing Services, Inc. (CBS), as the result of [Mr. Long's] actions as charged in the information is approximately $62,645.60." Additionally, the agreement sets forth a factual basis for Mr. Long's guilty plea and includes Mr. Long's admission that the factual statements of the information are true. The agreement also states that the United States Government will not seek to prosecute Mr. Long "on any other known possible criminal violations occurring in the Western District of Missouri as a result of [his] actions underlying this offense."

### I.

Relator Robert R. Long, as point one on appeal, contends that the court erred in attempting to compel him to answer questions during the statutory debtor's examination on April 22, 1993, after he asserted his right against self-incrimination. He claims the court exceeded the jurisdiction granted pursuant to sections 513.380 and 513.390, RSMo 1986, and that the court's order to compel his answers violated Article I, § 19, of the Missouri Constitution and the Fifth and Fourteenth Amendments to the United States Constitutions. The creditors respond by claiming that Mr. Long waived his constitutional rights against self-incrimination, and the trial court appropriately directed him to answer.

The privilege against self-incrimination is guaranteed by the Fifth Amendment of the United States Constitution and Article I, section 19 of the Missouri Constitution. To avail oneself of the guaranteed right, one must assert the right. *State ex rel. Lee v. Cavanaugh*, 419 S.W.2d 929, 935 (Mo.App. 1967). The privilege extends to judgment debtors examined pursuant to section 513.380. *State ex rel. Hudson v. Webber*, 600 S.W.2d 691, 692 (Mo.App.1980). Thus, a judgment debtor examined pursuant to section 513.380, who invokes the privilege against self-incrimination, cannot be compelled to answer a question the answer to which may tend to incriminate him. An answer that incriminates is "an answer which discloses a fact that would form a necessary and essential part of a crime, which is punishable by the laws." *Cantor v. Saitz*, 562 S.W.2d 774, 777 (Mo.App.1978), quoting *United States v. Burr*, 25 Fed.Cas. No. 14,-

692 E, pages 38, 40, 1 Burr's Trial 244. The privilege extends "not only to refusing to answer the question asked, but also to refusing to explain how the answer might incriminate the witness." *Saitz,* 562 S.W.2d at 778, quoting *Cavanaugh,* 419 S.W.2d at 934. Once a witness invokes the right against self-incrimination, a rebuttable presumption arises that the answer to the question posed might tend to incriminate him. *State v. Carey,* 808 S.W.2d 861, 865 (Mo.App.1991). The party questioning the witness may rebut the presumption by demonstrating that the answer to the question posed cannot possibly tend to incriminate the witness. *Id.* at 865. The trial court can compel the witness to answer the question only after it finds, as a matter of law, that the witness' response to the question cannot possibly tend to incriminate the witness. *Id.* The trial court is given wide latitude in this determination. *Id.*

▇▇ A witness may waive the right against self-incrimination. For example, the court in *Cavanaugh* stated:

> [O]nce the witness has admitted the whole of an incriminating situation, testimony as to the details [of the situation] cannot [then] further incriminate the witness, and thus the court can say, as a matter of law, as to such detail questions, that the answer cannot further incriminate the witness, or as the Supreme Court said in *Rogers v. United States,* [340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)], the answer to the detailed questions do not add 'any real danger' of further incrimination of the witness.

419 S.W.2d at 936. However, the court in *Cavanaugh* stated that once a witness invoked his right against self-incrimination, "a waiver of such [right] against self-incrimination will not be held to have occurred upon vague and uncertain evidence." *Id.,* quoting *Smith v. United States,* 337 U.S. 137, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). The *Cavanaugh* court also noted that it "would indulge every reasonable presumption against waiver [of the right against self-incrimination] and that a waiver would not be declared unless it clearly appeared that the witness intended to and did knowingly waive his rights." *Cavanaugh, supra* at 936. In *State v. Ruff,* 729

S.W.2d 556, 560 (Mo.App.1987), the Eastern District noted that "[a] witness waives his Fifth Amendment privilege against self-incrimination when he discloses information which would incriminate him and thereafter must disclose the details of that activity."

▇▇ A number of questions were asked of Mr. Long by counsel for the judgment creditors at the debtor's examination on April 22, 1992. The questions were varied, but most of them inquired about Mr. Long's assets. After stating his name, Mr. Long invoked his Fifth Amendment right against self-incrimination to each question he was asked, and he declined to answer. The creditors assert that because Mr. Long initiated suit against them, answered questions about his finances during discovery, did not assert his privilege against self incrimination until the debtor's examination, pleaded guilty to the factual charge contained in the criminal information in United States District Court, Western Missouri, signed the plea agreement acknowledging that he defrauded the creditors, and made a factual statement under oath when he entered his guilty plea as to how he defrauded the creditors, he waived his state and federal constitutional privileges against self-incrimination.

The creditors do not set forth specific questions that they believe Mr. Long should have been and properly was compelled to answer. They seem to assert that he "generally waived" his right not to answer any question asked at the judgment debtor's examination. They rely on the assertion in *Cavanaugh* that where a witness "has admitted facts which tend to completely incriminate him, he cannot thereafter claim the privilege against the details." *State ex rel. Lee v. Cavanaugh,* supra, at 935. However, in *Cavanaugh,* the witness had answered several questions at a debtor's examination, responding that he intended to make payments to people who had extended a loan to him to purchase an automobile. Responding to a question, he stated that he was loaned money by three people. He refused to answer who the three people were, asserting his privilege against self-incrimination, saying he believed the answer to the question would incriminate him "[b]ecause they might

think I had money." *Id.* at 930–31. The court inquired further as to how the witness might be incriminated by answering the question, and the witness refused to answer saying, "it might incriminate me." *Id.* at 932. The court found the witness in civil contempt and ordered him committed to jail until he purged himself of the contempt. *Id.* The witness sought this court's writ of prohibition to preclude the circuit court from enforcing its order of contempt. On appeal, this court found that the witness validly claimed his constitutional privilege against self-incrimination. Thus, even though the witness had disclosed some information about acquiring a loan to purchase an automobile, the witness could not be compelled to provide additional detailed information about the people from whom he acquired the loan because the court concluded the witness's statements were "uncertain and ambiguous" and not sufficient to waive his privilege against self-incrimination.

*Cavanaugh* does not support the creditors' position that they are entitled to ask Mr. Long questions and receive answers to every question about Mr. Long's assets despite his assertion of his right against self-incrimination. While Mr. Long's guilty plea in federal court to the charge that he defrauded the creditors, his factual statement under oath satisfying the elements of the offense, the incriminating plea agreement which he signed acknowledging facts which supported his guilty plea, and his answers to questions during his deposition and to interrogatories during the civil suit that he initiated against the creditors may have waived his privilege against self-incrimination as to certain questions regarding facts relating to his criminal conduct and regarding the matters to which he responded in civil discovery, these occurrences did not constitute a general waiver of his constitutional privilege against self-incrimination as to questions regarding his assets, their location, or his general unrelated conduct.

The creditors do not present specific questions which were asked Mr. Long at the debtor's examination to which Mr. Long waived his constitutional privilege against self-incrimination and to which they were entitled to an answer. Among the many questions propounded to Mr. Long about his assets were whether he held securities, their location, the real property he held anywhere in the United States in September 1992, the personal property he held in September 1992, whether he had conveyed any real property he held in September 1992, and whether he held any property in joint tenancy with his wife. The trial court could not have determined, as a matter of law, the impossibility of Mr. Long's answers to the questions asked him during the debtor's examination to tend to incriminate him. *State ex rel. Flynn v. Schroeder,* 660 S.W.2d 435, 437 (Mo.App.1983). Mr. Long was not found in contempt for failing to answer specific questions to which he had waived his privilege against self-incrimination. He was erroneously found in civil contempt of court for refusing to answer all questions about his assets.

## II.

■ Mr. Long claims that the trial court erred in attempting to compel him to produce personal records at the judgment debtor's examination pursuant to subpoena duces tecum, issued at the request of the judgment creditors and by finding him to be in civil contempt for his non-compliance. Mr. Long contends that the trial court exceeded its jurisdiction granted by sections 513.380 and 513.390, and violated his privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, section 19 of the Missouri Constitution.

■ The Supreme Court of Missouri in *State ex rel. Rowland Group, Inc. v. Koehr,* 831 S.W.2d 930 (Mo. banc 1992), determined that sections "513.380–513.395, the statutes authorizing a judgment debtor examination, the express authority within the statute itself to compel oral testimony, and the inherent authority of the court to compel the production of written evidence" are authority for circuit courts to issue subpoenas to produce documents, "to the extent that the documents ordered produced are relevant to the purposes of the judgment debtor examination." *Id.* at 932–33. Once the trial court

determines a subpoena duces tecum should issue, sections 491.090 and 491.100, which govern compulsory documentary production, apply. *Id.* at 933. Thus, the trial court in this case has statutory and inherent authority to compel the production of documents provided the documents "are relevant to the purposes of the judgment debtor examination." *Id.* Although *Koehr* involved a corporate debtor, the jurisdiction of trial courts to compel document production from natural judgment debtors is no different than its ability to compel document production from a corporate judgment debtor.

█ The natural judgment debtor enjoys the privilege against self-incrimination that the corporate judgment debtor cannot assert. The Fifth Amendment, United States Constitution, and the Article I, section 19, Missouri Constitution, rights against self-incrimination are personal, applying to born (natural) persons and not artificial persons, such as corporations. *State ex rel. Realty Consultants, Inc. v. Dowd,* 796 S.W.2d 881, 882 (Mo. banc 1990); *State ex rel. Jay Bee Stores, Inc. v. Edwards,* 636 S.W.2d 61, 64 (Mo. banc 1982), Bardgett concurring, quoting *City of Kansas City v. Carter,* 610 S.W.2d 104, 107 (Mo.App. 1980). Thus, the corporate debtor in *Koehr* could not assert a right against self-incrimination to preclude subpoenaing its corporate records.

█ A corporate officer can be compelled to produce corporate documents in his possession despite a personal privilege against incrimination. *Dowd,* 796 S.W.2d at 882. The creditors in this case claim the records sought are "related to the corporation," and that Mr. Long is, therefore, required to produce them. *State ex rel. Falcone v. Levitt,* 572 S.W.2d 252, 254 (Mo.App.1978).

The records listed in the subpoena duces tecum do not appear to be corporate records. The creditors do not claim the records they seek belong to them or that they are their corporate records. They claim that the records sought are "related" to them. The documents Mr. Long was directed to bring pursuant to the subpoena duces tecum were as follows:

**EXHIBIT A**

**Attached to the Subpoena Duces Tecum**

1. Your personal and/or business federal, state and local income tax returns for 1987 to present.
2. All financial statements prepared by you, or on your behalf from 1990 to the present including but not limited to all financial statements presented to the Commercial Bank of Oak Grove and/or the Bank of Odessa.
3. All correspondence, records, monthly statements, canceled checks or other documentation between you, Ruddy [sic] Beretta, Helen Beretta, and the Lexington Building and Loan concerning or referencing the Leiter Apartments and/or real property located at 13th and Franklin, Lexington, Missouri.
4. All correspondence, records, canceled checks, certificates of title or other document referencing the transfer of interest in a Cessna 210 airplane to Karl Fallman in consideration of assumption of debt and repair bills in September, 1992.
5. All canceled checks, receipts, or other documents evidencing or showing the payments of the following sums to Jim Worthington: $2,000.00 on December 24, 1991; $8,000.00 on February 24, 1992; $2,000.00 on April 20, 1992; $11,692.19 on August 7, 1992; $6,000.00 on September 30, 1992.
6. Your original personal checkbooks, ledgers, canceled checks and monthly statements for all bank or financial accounts held solely in your name or jointly with Valoree Maycock or anyone else from December 20, 1991 to the present.
7. A list of all personal property in your residence.

The Supreme Court of the United States in *Fisher v. United States,* 425 U.S. 391, 409, 96 S.Ct. 1569, 1508, 48 L.Ed.2d 39 (1976), taught that the Fifth Amendment is not violated "by the fact alone that the papers on their face [sought by documentary summons] might incriminate ... for the privilege pro-

tects a person only against being incriminated by his own compelled testimonial communications." In *Fisher*, the Supreme Court determined that tax records prepared by the taxpayer's accountant and which pertained to the taxpayer, who asserted the privilege against self-incrimination, sought by documentary summons served on the taxpayer's attorney, were not protected by the Fifth Amendment because they were the kind of papers usually prepared by accountants, belonged to the accountant, the existence and location of the papers were known, "and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *Id.* at 411, 96 S.Ct. at 1581. However, the Court specifically stated "[w]hether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers.'" *Id.* at 414, 96 S.Ct. at 1582.

In *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the defendant was convicted of fraudulent misrepresentation by a fiduciary and of false pretenses. The Supreme Court held that search of the defendant's offices for business records, their seizure, and their introduction into evidence did not offend the Fifth Amendment's proscription against compulsory self-incrimination. The Court noted that at trial, "the defendant was not asked to say or do anything." *Id.* at 473, 96 S.Ct. at 2745. The records seized and introduced at trial contained statements that the defendant had voluntarily written, the search and seizure of the records was conducted by law enforcement officers, and the records were authenticated at trial by a hand writing expert and not the defendant. *Id.* The Court noted, however, that "the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information." *Id.* at 473–74, 96 S.Ct. at 2745. The Court observed that seizure of "the same materials by law enforcement officers differs in a crucial respect—the individual against whom the search is directed is not required

to aid in the discovery, production, or authentication of incriminating evidence." *Id.* at 474, 96 S.Ct. at 2745.

The items listed in the subpoena duces tecum seek the production of documents that, on the face of the subpoena, do not appear to be corporate records of the creditors or any one of them. The subpoena purports to compel Mr. Long to appear and to bring records which include certain of his tax returns, canceled checks, and personal correspondence. The items sought are private records.

While the Missouri Supreme Court determined in *State ex rel. Rowland Group v. Koehr*, 831 S.W.2d at 933, that debtors can be subpoenaed to produce items at statutory judgment debtor examinations, the debtor in *Koehr* was a corporation and the Court did not consider application of the state and federal constitutional privileges against self incrimination when applied to subpoenas duces tecum seeking private documents from a judgment debtor who is a natural person asserting his privilege. In determining that Missouri's trial courts have both inherent and statutory authority to compel a judgment debtor to produce documents at a judgment debtor's examination, the Court noted:

> Compelling a witness to produce a document in the possession of the witness is barely distinguishable from requiring the witness to give testimony when the facts lie within the knowledge of the witness. (citation omitted) The essences of the testimony are identical. (Citation omitted) It is appropriate to imply from the express grant of authority to compel the appearance and testimony of the judgment debtor the concomitant authority to compel production of documents through a subpoena duces tecum for a judgment debtor examination under § 513.380.

*Id.* at 932. Because "a document in the possession of the witness is barely distinguishable from requiring the witness to give testimony when the facts lie within the knowledge of the witness," *id.*, and because "the essences of the testimony are identical," *id.*, subpoenaing private documents for production at a judgment debtor's examination

from a natural judgment debtor who asserts his privilege against self-incrimination raises the presumption that the private documents will tend to incriminate him. *See State ex rel. Shapiro Realty & Inv. Co. v. Cloyd*, 615 S.W.2d 41, 46 (Mo. banc 1981), (holding that Article I, section 19, of the Missouri Constitution requires that once a witness claims the privilege against self-incrimination afforded by that provision, a rebuttable presumption arises that the witness' answer might tend to incriminate him). The judgment creditors having failed to rebut the presumption that the records Mr. Long was directed to bring with him to the judgment debtor's examination could not possibly have incriminated him, the trial court erred by attempting to enforce the subpoena duces tecum and in holding Mr. Long in contempt for failing to produce the records sought.

### III.

Mr. Long contends as his third point on appeal that the trial court erred in attempting to compel third parties to testify and to produce documents at the debtor's examination on April 22, 1993, because the court lacked jurisdiction under section 513.-380 and Supreme Court Rule 76.27 to compel testimony of third parties at judgment debtor's examinations. Specifically, Mr. Long asserts that section 513.380 authorizes the trial court to compel the attendance of the judgment debtor only, and the trial court erred by issuing capias warrants to compel the attendance of two third parties for their failure to appear and produce documents at the April 22 debtor's examination pursuant to subpoena duces tecum and to compel their attendance at the rescheduled debtor's examination on May 14, 1993.

The Eastern District in *State ex rel. Anderson v. Hess*, 709 S.W.2d 526 (Mo.App. 1986), considered the jurisdiction of Missouri's courts to compel third parties to produce documents at judgment debtor's examinations. The judgment creditor caused subpoenas duces tecum to be served on husband and wife judgment debtors in their individual capacities and on the wife as secretary of a corporation in which the creditor believed the judgment debtors owned stock. *Id.* at 527. The documentary subpoena directed the wife,

as corporate secretary, to bring various corporate documents and "all shares of stock [in the corporation] in the names [of the judgment debtors]." *Id.* The Eastern District determined that the trial court erroneously issued the subpoena duces tecum, section 513.380 applies only to judgment debtors, and the trial court lacked jurisdiction to order the appearance of the judgment debtor in her capacity as secretary of a corporation. *Id.* at 528. The court also held that the trial court lacked jurisdiction to compel the judgment debtor to produce documents pursuant to subpoena duces tecum because section 513.380 only explicitly authorized the trial court to compel the attendance of the judgment debtor. *Id.* However, the Supreme Court of Missouri abrogated the holdings in *Anderson v. Hess, supra*, to the extent the case disagreed with the Court's holding in *State ex rel. Rowland v. Koehr*, that trial courts have both implied statutory authority and inherent authority to compel a judgment debtor to produce documents at judgment debtor examinations. 831 S.W.2d at 932.

The issue in *Koehr* was limited to whether a circuit court is authorized, pursuant to section 513.380, RSMo 1986, to order a judgment debtor to produce documents at the statutory judgment debtor's examination. *Id.* at 931. The Supreme Court did not consider whether third parties could be subpoenaed and required to produce documents at a judgment debtor's examination. Thus, the holding of the Eastern District in *Anderson, supra*, that trial courts lack jurisdiction pursuant to section 513.380 to compel attendance of third parties and their production of documents at judgment debtor's examinations has not been abrogated. However, review of *Koehr* for further direction is helpful.

The Court in *Koehr* considered the purpose of an examination conducted pursuant to authority granted by section 513.380 when it determined whether courts have implied statutory authority pursuant to section 513.-380 to require judgment debtors to produce documents. *Id.* at 931. The Court noted that "[t]he principal purpose of a judgment debtor examination is to discover assets, to compel the defendant in the execution to

disclose under oath all the assets of his estate, and after this discovery, to authorize the court to say whether or not the debtor has assets that may be levied on by execution in favor of the judgment creditor. (Citation omitted). A related purpose is to disclose fraudulently concealed property so that it may properly be subjected to the payment of a just debt." *Id.* at 932. The court determined that the production of documents to discover assets belonging to the judgment debtor facilitates enforcement of valid judgments, while restricting judgment debtor examinations to the oral testimony of the judgment debtor "thwarts fulfillment of the statutory purpose." *Id.*

While subpoenaing third parties to appear and testify at judgment debtor's examinations and requiring them to produce relevant documents might "enhance the efficiency and effectiveness of judgment debtor examination," and may "enhance the accuracy of the court's advisory opinion," section 513.380 only explicitly authorizes courts to compel judgment debtors to appear. It does not specifically authorize courts to require third parties to appear and testify. Therefore, the Court's rationale in *Koehr* that "the express grant of authority to compel the appearance and testimony of the judgment debtor [implies] the concomitant authority to compel [the] production of documents ... for a judgment debtor examination" does not apply. 831 S.W.2d at 932.

■ Statutory debtor's examinations are limited statutory creations. Section 513.380. They did not exist at common law. Unlike suits to enforce contracts or to seek redress for tort injury, judgment debtor's examinations pursuant to section 513.380 and Rule 76.27 are "supplemental proceeding[s], summary in nature, and [are] intended to disclose fraudulently concealed property in order that it may rightfully be subjected to the payment of a just debt." *Kleinfeld v. Graneto Datsun, Inc.*, 686 S.W.2d 885, 886 (Mo.App.1985). The court in a judgment debtor's examination can deliver an advisory opinion stating whether the debtor has and owns property which ought to be applied to payment of the judgment, but the court lacks authority to issue any kind of order or judg-

ment. *Id.* Neither can one appeal from examination. *Id.* Section 513.380 neither specifically nor impliedly authorizes the trial court to compel the presence of third parties. Thus, while trial courts have statutory authority to compel the judgment debtor to appear and to produce documents relevant to the judgment debtor proceeding, *Koehr*, supra, at 933, the limited authority granted courts to conduct judgment debtor's examinations does not include statutory authority to compel attendance of third party witnesses. *Anderson v. Hess*, 709 S.W.2d at 528. Additionally, because judgment debtor's examinations are purely limited statutory proceedings, trial courts lack inherent authority to compel the attendance of third parties at debtor's examinations. Therefore, the trial court lacked jurisdiction to compel the attendance and testimony of third parties at the judgment debtor's examination and to compel them to produce documents.

The preliminary writ of prohibition previously entered in this case is hereby made absolute, and the Respondent is prohibited from enforcing his order of April 22, 1993, purporting to compel Robert R. Long to give sworn testimony under oath and to produce documents in response to a subpoena duces tecum notwithstanding his assertion of rights pursuant to United States Constitution, Amendment 5, and Missouri Constitution Article I, section 19 (1945), and from compelling Valoree Maycock, Rudy Beretta, Mike Harrison, Karl Fallman, Larry Wims, and Daniel Cobb to appear and give sworn testimony under oath in connection with a debtor's examination pursuant to section 513.380, RSMo, 1986, all for the reasons set forth herein.

SPINDEN, P.J., concurs.

SMART, J., concurs in result in separate concurring opinion.

SMART, Judge, concurring.

I concur in the result and the analysis of the divisional opinion, which I regard as sound in view of the extant law. For whatever it may be worth, however, I commend to the legislature a study of whether the statutes and rules should be broadened to allow,

under some conditions, compulsion of the appearance and testimony of third parties, and the production of documents by such third parties.