STATE of Missouri ex rel. David
M. NOTHUM and Glenette
Nothum, Relators,

v.

The Honorable Joseph L. WALSH III,
Circuit Judge, St. Louis County
Circuit Court, Respondent.

No. SC 92268.

Supreme Court of Missouri,
En Banc.

July 31, 2012.

Norman W. Pressman, Kathryn M. Koch and Benjamin K. Westbrook, Goldstein & Pressman PC, St. Louis, and Donald R. Carmody and John E. Hilton, Carmody MacDonald PC, Clayton, for Relators.

Jeffrey T. McPherson and Christopher R. LaRose, Armstrong Teasdale LLP, St. Louis, for Respondent.

LAURA DENVIR STITH, Judge.

David and Glenette Nothum seek a writ prohibiting the circuit court from compelling them to testify in a judgment debtor's examination conducted pursuant to section 513.380.[1] The court ordered the Nothums to testify despite their assertion of the privilege against self-incrimination and held them in contempt when they refused to do so, finding that the immunity granted to the Nothums pursuant to section

513.380.2 was coextensive with their constitutional privilege.

The trial court abused its discretion in ordering the Nothums to testify. To supplant the constitutional privilege against compulsory self-incrimination, the scope of immunity granted must be coextensive with the scope of the constitutional privilege, which the United States Supreme Court has held includes both use immunity *and derivative use immunity. Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Here, the Nothums received immunity pursuant to section 513.380.2, which authorizes a prosecutor only to provide "use immunity" to "a judgment debtor for any statement made at a judgment debtor's examination." § 513.380.2. A prosecutor has no inherent authority to provide immunity beyond the authority granted the prosecutor by Missouri statutes. The prosecutor here, in accordance with the statute, said he granted use immunity. Such use immunity did not include derivative use immunity and, so, was not coextensive with the Nothums' constitutional privilege. The trial court abused its discretion in compelling the Nothums to testify. Accordingly, this Court issues its permanent writ of prohibition.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Arizona Bank and Trust obtained a judgment issued by an Arizona state court against David and Glenette Nothum. The bank subsequently registered its judgment in several Missouri counties, including St. Louis County, and unsuccessfully sought to execute on it.

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

2. The Court's holding on this point makes it unnecessary to address the Nothums' addi-

tional argument that the trial court erred in failing to make findings that answering each challenged question could not possibly have the tendency to incriminate them.

The bank then obtained an order under section 513.380 directing the Nothums, as judgment debtors, to undergo examination under oath regarding their ability and means to satisfy the judgment.

Prior to the scheduled debtor's examination, the St. Louis County prosecuting attorney's office issued a letter, pursuant to the authority granted it by section 513.380.2, entitled "Grant of Use Immunity," signed by an assistant prosecuting attorney. The letter stated that it provided "use immunity to [the Nothums] . . . for any statement made at any judgment debtors examination conducted pursuant to Section 513.380 . . . when such statement is reasonably related to any question directed to the existence and location of any assets, liabilities, or sources of income of David M. Nothum and Glenette Nothum." The letter further stated, "Said use immunity will protect [the Nothums] from prosecution for any offense related to the contents of [their] statement[s] so made at a judgment debtors examination."

At the examination, Mr. Nothum took the stand and invoked his privilege against self-incrimination. Although Ms. Nothum never was sworn in and did not testify, her attorney represented to the court that she too intended to assert her privilege against self-incrimination. The bank then produced the letter from the St. Louis County prosecuting attorney's office granting the Nothums use immunity. In light of this grant of immunity, the trial court ordered the Nothums to respond to the bank's inquiries. They continued to invoke the privilege. The trial court found them both in contempt and ordered them to be jailed in lieu of bond in the amount of the bank's judgment but stayed his order for 10 days to permit the Nothums to seek extraordinary relief.

The court of appeals issued a writ, holding in *State ex rel. Nothum v. Kintz*, 333 S.W.3d 512 (Mo.App.2011) (*Nothum I*), that the trial judge exceeded his authority because he: (1) "failed to make a finding, as a matter of law, that Mr. Nothum's responses to the questions put to him could not possibly tend to incriminate him," and (2) failed to swear Ms. Nothum in as a witness and make findings, as a matter of law, that her responses could not possibly tend to incriminate her. *Id.* at 516.

After *Nothum I*, the bank scheduled a second judgment debtor's examination before the circuit judge.[3] Before the Nothums were questioned, the court heard arguments related to the scope of the immunity provision in section 513.380.2. Based on those arguments, the judge determined that section 513.380.2 grants more than use immunity, stating in his order, "While the statute denominates the immunity as the limited 'use immunity,' the court concludes that the legislature intended to grant a judgment debtor the broader 'transactional immunity' by expressly shielding such individual from 'any offense related to the content of the statements made.'" Accordingly, he held that the immunity provided to the Nothums was "coextensive with the Missouri and Federal constitutional privileges against self-incrimination and removes any possibility that statements made by [them] in response to any questions posed by [the bank] during [their] judgment debtor examination can be used to prosecute [them]." The court, therefore, ordered the Nothums to appear for the examination and answer questions posed by the bank.

The Nothums appeared but continued to assert their privilege against self-incrimi-

---

**3.** The case was assigned to Judge Joseph Walsh after the retirement of Judge John Kintz, who presided over *Nothum I* at the trial court level.

nation. At that point, the court entered orders of contempt against them but then stayed these orders for 30 days to allow the Nothums time to seek extraordinary relief from his orders directing them to answer the bank's questions. The court of appeals issued a preliminary order of prohibition, but transferred the case to this Court after opinion pursuant to Rule 83.02. This Court directs a permanent writ to issue.[4]

## II. STANDARD OF REVIEW

■■■ "The extraordinary remedy of a writ of prohibition is appropriate in one of three circumstances: (1) to prevent the usurpation of judicial power when the trial court lacks jurisdiction; (2) to remedy [an] excess of jurisdiction or an abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not made available in response to the trial court's order." *State ex rel. Proctor v. Bryson*, 100 S.W.3d 775, 776 (Mo. banc 2003). Missouri courts often have issued writs of prohibition to prevent an abuse of

discretion in ordering a witness to testify over the witness' proper invocation of the privilege against self-incrimination.[5] *See, e.g., Hill v. Kendrick*, 192 S.W.3d 719 (Mo. App.2006); *State ex rel. Heidelberg v. Holden*, 98 S.W.3d 116 (Mo.App.2003); *State ex rel. Long v. Askren*, 874 S.W.2d 466 (Mo.App.1994). Significantly, both *Heidelberg* and *Askren*, as here, involved cases in which writs of prohibition were granted because trial courts abused their discretion by improperly ordering witnesses to testify before judgment debtor's examinations. A writ of prohibition in these circumstances is especially appropriate, as "[t]he court in a judgment debtor's examination . . . lacks authority to issue any kind of order or judgment" and one may not "appeal from examination." *Askren*, 874 S.W.2d at 477.

■■■ Where, as here, the question of whether an abuse of discretion has been committed "depends on the interpretation of a statute, this Court reviews the statute's meaning *de novo.*'" *State ex rel. C.F. White Family P'ship v. Roldan*, 271 S.W.3d 569, 572 (Mo. banc 2008).

4. The trial court issued all four of its orders—the two orders directing the Nothums to appear and answer questions and the two holding them in contempt but staying the contempt—during proceedings that took place on October 4, 2011. Though the Nothums seek relief in connection with all four orders, this Court focuses on the trial court's orders directing them to answer as the contempt orders have been stayed pending resolution of the Nothums' associated request, addressed here, for a writ prohibiting the trial court from ordering them to testify in the first instance. This Court's holding that the trial court abused its discretion in ordering the Nothums to testify renders moot the trial court's stayed contempt orders.

5. As noted, the Nothums have sought relief in connection with all four orders entered by the trial court and, despite the dissent's characterization of this action as one involving the "Court's review of an order of civil con-

tempt," the analysis here actually centers on review of the trial court's *order compelling the Nothums to testify in the first instance.* Indeed, the contempt orders themselves have been stayed precisely so that the Nothums could seek relief of the underlying orders. No authority has been cited to suggest that a writ of prohibition is not appropriate to prevent a court from improperly ordering a witness to testify. To the contrary, substantial Missouri precedent, cited above, demonstrates that a writ is the appropriate avenue for review of such orders. *Carothers v. Carothers*, 337 S.W.3d 21 (Mo. banc 2011), cited by the dissent for the proposition that a writ of prohibition is not appropriate here because civil contempt orders are subject to appeal, is not to the contrary. *Carothers* addressed only the issue of when *civil contempt* orders may be appealed, not whether or when orders compelling witnesses to testify in the first instance may be reviewed by writ. *Id.*

### III. THE NOTHUMS' IMMUNITY WAS NOT COEXTENSIVE WITH THE PRIVILEGE AGAINST SELF–INCRIMINATION

#### A. The Privilege Against Self-incrimination

The Fifth Amendment to the United States Constitution, which is "fully applicable to the States through the Fourteenth Amendment," *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 53, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), provides, "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Missouri Constitution similarly states that "no person shall be compelled to testify against himself in a criminal case." Mo. Const. art. I, § 19. "The principles to be followed in applying these two provisions are consistent." *State ex rel. Munn v. McKelvey*, 733 S.W.2d 765, 767 (Mo. banc 1987). Both embody a privilege that "reflects many of our fundamental values and most noble aspirations," including "our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt." *Murphy*, 378 U.S. at 55, 84 S.Ct. 1594.

Accordingly, the privilege "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The right to invoke the privilege against self-incrimination "extends not only to answers which would in themselves support a conviction of a crime but likewise embraces those answers which would simply furnish a link in the chain of evidence needed to convict the witness." *Munn*, 733 S.W.2d at 768.

But the privilege against compulsory self-incrimination is not absolute. When a witness is granted testimonial immunity that fully supplants her constitutional rights, for instance, the witness's "refusals to answer [questions] based on the privilege [are] unjustified." *Kastigar*, 406 U.S. at 449, 92 S.Ct. 1653. This principle is grounded on the notion that "[i]mmunity statutes . . . are not incompatible with [the] values" underlying the privilege but instead "seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify." *Id.* at 445–46, 92 S.Ct. 1653. Statutes granting immunity, in other words, "reflect[ ] the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in [a] crime." *Id.* at 446, 92 S.Ct. 1653.

#### B. The Immunity Granted Must be Coextensive with the Privilege

Even when a witness has been granted immunity, for testimony to be compelled over a proper assertion of privilege, the immunity provided to the witness must supplant the protection afforded by the federal and state constitutions fully. *Id.* at 462, 92 S.Ct. 1653. "A grant of immunity that is as comprehensive as the protection provided by the privilege is one that leaves the witness and the prosecutorial authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege." *Heidelberg*, 98 S.W.3d at 122.

In discussing these principles, courts have made clear that there are

three distinct types of immunity.[6] "Use immunity," which provides the least amount of protection to a witness, merely "prevents the prosecution from directly utilizing immunized testimony itself." *United States v. Smith,* 452 F.3d 323, 336 (4th Cir.2006). "Derivative use immunity" prevents a prosecutor from using "evidence derived directly and indirectly" from compelled testimony. *Kastigar,* 406 U.S. at 453, 92 S.Ct. 1653. "Transactional immunity" represents the most comprehensive form of immunity and accords a witness "full immunity from prosecution for the offense to which the compelled testimony relates." *Id.*

In considering the type of immunity necessary to supplant the constitutional privilege against self-incrimination, *Kastigar* emphasized that the privilege's "sole concern is to afford protection against being 'forced to give testimony leading to the infliction of penalties affixed to ... criminal acts.'" *Id.* at 453, 92 S.Ct. 1653, quoting *Ullmann v. United States,* 350 U.S. 422, 438–39, 76 S.Ct. 497, 100 L.Ed. 511 (1956) (alteration in original). *Kastigar* also explained that "use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Id.*

Accordingly, the Supreme Court held, "immunity from use *and* derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege." *Id.* at 453, 92 S.Ct. 1653 (emphasis added). When immunity of a lesser scope is provided, a witness is "justified in refusing to answer" over a proper assertion of the privilege against self-incrimination. *Id.* at 449, 92 S.Ct. 1653.

Consistent with these principles, the federal immunity statute requires that a grant of immunity protect the defendant from both use and derivative use of compelled testimony. 18 U.S.C. § 6002. It is in this context that the federal cases cited by the dissenting opinion hold that a grant of use immunity includes a grant of derivative use immunity—18 U.S.C. § 6002, unlike the Missouri statute at issue here, specifically provides that "no testimony or other information compelled under [a court] order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case." If section 513.380 had such language, this case would not be here. But it does not, and the federal cases, therefore, are not analogous.

### C. General Principles of Immunity in Missouri

This Court held in *Munn* that the power to grant immunity "does not inher[e] in the office of prosecutor, but rather that Missouri prosecutors may obtain the authority to grant immunity only after legislative deliberation and the approval of carefully drawn legislation." 733 S.W.2d at 769. Accordingly, whether a witness has or may be granted immunity, as well as the scope of any immunity that is or may be granted, depends on what the legislature has authorized.[7]

---

6. *See, e.g., State v. Strong,* 110 N.J. 583, 542 A.2d 866, 869 (1988) (explaining that legislative effort "toward finding a middle ground between 'use' immunity and 'transactional' immunity" led to the creation of derivative use immunity); *In re Caito,* 459 N.E.2d 1179, 1182–83 (Ind.1984) ("Three types of immunity may be granted a witness in exchange for his testimony...."); *State v. Soriano,* 68 Or. App. 642, 684 P.2d 1220, 1222 n. 3 (1984) ("There are generally three kinds of testimonial immunity.").

Missouri's legislature has provided for witness immunity in several statutes, but it has varied the type and extent of immunity that may be granted depending on the nature of the issues for which immunity is sought. Numerous sections do grant full transactional immunity to witnesses. For instance, section 491.205, contained in the general provisions concerning witness testimony, states that witnesses may be immunized from prosecution for "any act, transaction, matter or thing" when they are "called to testify or provide other information at any proceeding ancillary to or before a circuit or associate circuit court or grand jury."

The same language is used in section 386.470, which grants immunity from prosecution for any "act, transaction, matter or thing" related to the testimony of persons called to appear before the public service commission. Likewise, section 622.390 provides that witnesses ordered to testify before the division of motor carrier and railroad safety may be granted immunity "for or on account of any act, transaction, matter or thing concerning which the person shall have been examined."

Similar statutes grant full transactional immunity to witnesses testifying about cer-tain tax matters before the director of revenue, see §§ 136.100, 144.340 (granting transactional immunity in tax cases "for or on account of any transaction made or thing concerning which" a witness may be compelled to testify), and to individuals with information about potential violations of Missouri's antitrust laws. § 416.111 (providing immunity from prosecution "on account of any transaction, matter or thing concerning which he may testify").[8]

■ These statutes provide immunity that is more protective than that required by the United States or Missouri constitution. See Kastigar, 406 U.S. at 453, 92 S.Ct. 1653 ("Transactional immunity ... affords the witness considerably broader protection than does the Fifth Amendment privilege."). Accordingly, a witness who is given immunity under these statutes may be compelled to testify even over her assertion of the privilege against self-incrimination. Id.

D. Section 513.380 Provides Only Use Immunity, which is Not Coextensive with the Privilege Against Self-incrimination

The prosecutor did not grant the Nothums immunity under any of the statutes

7. Although some other jurisdictions hold that judges have inherent authority to grant immunity in certain circumstances, Missouri courts never have so held, nor has this Court been asked to address that issue here. See Gov't of the Virgin Islands v. Smith, 615 F.2d 964, 973–74 (3d Cir.1980) (explaining that "a court has inherent authority to immunize a witness" in certain circumstances); State v. Belanger, 146 N.M. 357, 210 P.3d 783, 787–88 (2009) (stating that, under New Mexico law, "[g]ranting use immunity ... is an inherent function of the judiciary"); People v. Stewart, 33 Cal.4th 425, 15 Cal.Rptr.3d 656, 93 P.3d 271, 304 (2004) (discussing California precedent that "potentially authorizes a trial court to grant immunity to a defense witness").

8. Other state legislatures have used comparable language when enacting statutes granting witnesses transactional immunity. See, e.g., Conn. Gen.Stat. § 54–47a (precluding the use of compelled testimony "for or on account of any transaction, matter or thing concerning which [a witness] is compelled to testify"); Del.Code Ann. tit. 11 § 3506 (providing immunity "for or on account of any transaction, matter or thing concerning which" the person is compelled to testify); Me.Rev.Stat. tit. 15 § 1314–A (granting immunity "for or on account of any transaction, matter or thing concerning which" the compelled testimony relates); Mass. Ann. Laws ch. 233, § 20C (providing immunity "with respect to the transactions, matters or things concerning which [a witness] is compelled" to testify).

just discussed, nor is this a criminal prosecution, nor a matter concerning taxes, antitrust violations or any of the other issues as to which Missouri's statutes give a prosecutor authority to grant immunity as to any matter, transaction or thing.

■ Here, the grant of immunity was given for a far more limited purpose related to civil liability—it was given so that a witness would not invoke the privilege against self-incrimination in a debtor's examination. Section 513.380 includes substantially different language from that used in Missouri's other immunity statutes, providing in relevant part:

1. Whenever an execution against the property of any judgment debtor, individual or corporate, issued from any court in this state, shall be returned unsatisfied, in whole or in part, by any sheriff or other proper officer, the judgment creditor in such execution ... may, at any time within five years after such return so made, be entitled to an order by the court rendering such judgment, requiring the judgment debtor ... to appear before such court at a time and place in said order to be named, to undergo an examination under oath touching his ability and means

to satisfy said judgment, and in case of neglect or refusal on the part of such judgment debtor ... such court is hereby authorized to issue a writ of attachment against said debtor, as now provided by law, and to punish him ... for contempt.

2. *Any prosecuting attorney or circuit attorney may grant use immunity from prosecution to a judgment debtor* for any statement made at a judgment debtor's examination conducted pursuant to subsection 1 of this section. *Such use immunity from prosecution shall protect such person from prosecution for any offense related to the content of the statements made.*

§ 513.380 (emphases added).[9]

■ In considering the scope of immunity that a prosecutor is authorized to grant under section 513.380.2, this Court begins with the well-established principle that "[t]he primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. banc 2007).

---

9. The Nothums contend that the immunity purportedly granted to them was entirely ineffective as a grant of immunity pursuant to section 513.380.2, as the letter in which it was contained was signed by an *assistant prosecuting attorney* rather than a *prosecuting attorney*. They are mistaken. *State v. Falbo*, 333 S.W.2d 279 (Mo. banc 1960), held, "An assistant or deputy prosecuting attorney legally appointed is generally clothed with all the powers and privileges of the prosecuting attorney; and all acts done by him in that capacity must be regarded as if done by the prosecuting attorney himself." *Id.* at 284 (quotation and alteration omitted).

To that end, Missouri courts have held repeatedly that an assistant prosecuting attorney's actions are "as if done by the prosecutor." *State v. Tierney*, 584 S.W.2d 618, 620

(Mo.App.1979); *see also State v. Carey*, 318 Mo. 813, 1 S.W.2d 143, 145 (1927), *quoting Browne's Appeal*, 69 Mo.App. 159 (Mo.App. 1897) (an assistant prosecuting attorney has authority to act in a prosecuting attorney's stead because "[w]here a public officer is authorized to appoint a deputy, the authority of that deputy, unless otherwise limited, is commensurate with that of the officer himself"). Consistent with this authority, and as the Nothums point to no case that has interpreted a statute granting authority to the prosecutor to mean that the assistant prosecutor may not act on the prosecutor's behalf, this Court rejects their contention that the letter signed by the assistant prosecuting attorney was ineffective under section 513.380.2.

■ Here, subsection 2 states twice that a prosecutor may grant *"use immunity."* The plain language of section 513.380 on its face solely authorizes prosecutors to provide witnesses who are compelled to testify in judgment debtor's examinations with *use immunity.*

The bank does not contend that the statute expressly grants transactional immunity but rather argues that the concluding phrase of subsection 2—protecting witnesses from *"prosecution for any offense related to the content of the statements made"*—converts the express grant of use immunity into an implied grant of transactional immunity. § 513.380.2 (emphasis added).

The derivation of the particular wording that the legislature chose to use in the final clause of section 513.380.2 is unknown. It is unique in Missouri's immunity statutes, and, as discussed further below, a thorough examination of federal immunity statutes and of those of each of our sister states has not revealed any statute in any jurisdiction that uses even similar language.

Whatever the reason such language was chosen, however, there is no evidence that the Missouri legislature intended by its use to convert the statute's express grant of authority to provide use immunity into an implied grant of authority to provide transactional immunity. This is evident from the many specific statutes discussed above that the Missouri legislature has adopted for use in other contexts. *See* §§ 136.100, 144.340, 416.111, 386.470, 491.205, 622.390.

Each of these other statutes *does* grant transactional immunity. In none did the legislature utilize the phrase "use immunity." In none did it prohibit "prosecution for any offense related to the content of the statements made," which is the language in section 513.380.2 that the trial

court found constitutes a grant of transactional immunity. Rather, as noted above, in each of these other immunity statutes, the legislature chose language immunizing witnesses from prosecution for acts or transactions.

■ Such language is not contained in section 513.380.2. Because "the Court has no authority to read into a statute a legislative intent contrary to the intent made evident by the plain language," *Reichert v. Bd. of Educ. of City of St. Louis,* 217 S.W.3d 301, 305 (Mo. banc 2007), this Court rejects the bank's argument that section 513.380.2 authorizes prosecutors to grant transactional immunity to witnesses appearing for judgment debtor's examinations. Indeed, although the dissenting opinion goes to great lengths to explain why it believes that the language used in the final clause of the statute is similar to that used in cases discussing transactional immunity, even it does not then conclude that section 513.380.2 grants transactional immunity, for on its face the statute says it grants use immunity, and the prosecutor's letter expressly states it granted use immunity.

For the first time in oral argument, the bank suggested that, even if there is no support for its position that the statute grants transactional immunity, this Court should hold that, in granting use immunity, section 513.380.2 inherently includes permission to grant derivative use immunity. Otherwise, the bank argues, the grant of immunity would be pointless, for only a grant of derivative use immunity will supplant the constitutional privilege against self-incrimination fully and so compel a person to testify or face contempt. The dissenting opinion, after explaining its belief that the language used is reminiscent of language that describes transactional immunity, also switches gears and echoes

the bank's argument that it simply is illogical to assume that the legislature really meant what it said in section 513.380.2.

This argument is unsupportable on multiple grounds. First, although both "use immunity" and "derivative use immunity" are forms of immunity from use of testimony and are to be distinguished from transactional immunity, derivative use immunity is different in kind from use immunity.

This was the lesson taught in *Kastigar*, 406 U.S. at 441, 442, 450, 453, 92 S.Ct. 1653, in which the United States Supreme Court found that use immunity statutes historically have "been found deficient for failure to prohibit the use of all evidence *derived* from compelled testimony." *Id.* at 458, 92 S.Ct. 1653 (emphasis added). It "carefully distinguishe[d] between use immunity and the broader derivative use immunity," *United States v. Plummer*, 941 F.2d 799, 804 (9th Cir.1991), and found the grant of use immunity to be insufficient to afford protection to the right against self-incrimination.[10] *Kastigar*, 406 U.S. at 453, 92 S.Ct. 1653. Only "[i]mmunity from the use of compelled testimony, *as well as* evidence derived directly and indirectly therefrom, affords [the same protection as the constitutional privilege]." *Id.* (emphasis added).

The federal immunity statute expressly prohibits use of either testimony and other information compelled by a grant of immunity "or any information directly or indirectly derived from such testimony or other information." 18 U.S.C. § 6002. While such a grant of immunity is adequate un-

der *Kastigar*, a lesser grant of use immunity is not.

 *Kastigar* was decided in 1972. Relying on it, this Court distinguished between use immunity and derivative use immunity in its 1987 decision in *Munn*, holding that prosecutors have no inherent authority to grant immunity "with respect to use *and* derivative use immunity." 733 S.W.2d at 769 n. 2 (emphasis added). *Munn* and *Kastigar* had recognized this distinction between use, derivative use and transactional immunity prior to the legislature's adoption in 1993 of section 513.380.2's immunity provision. It is a cardinal rule of statutory interpretation that "[t]he legislature is presumed to know the existing law when enacting a new piece of legislation." *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 352 (Mo. banc 2001).

Second, had the legislature wished to authorize prosecutors to provide derivative use immunity as well as use immunity, the statutes of other jurisdictions provided a model by which it could have done so. It had guidance, for example, from the federal immunity statute—the very statute interpreted in *Kastigar.* As noted earlier, the federal cases finding that a grant of use immunity includes derivative use immunity are all decided on the basis of this statute which, unlike the Missouri statute at issue here, explicitly provides that a grant of immunity protects against the use of both compelled testimony and "any information *directly or indirectly derived* from such testimony." 18 U.S.C. § 6002 (emphasis added).

10. As an example, *Kastigar* cited *Arndstein v. McCarthy*, 254 U.S. 71, 73, 41 S.Ct. 26, 65 L.Ed. 138 (1920), in which the immunity statute at issue stated, "No testimony given by [the witness] shall be offered in evidence against him in any criminal proceeding." *Id. Arndstein* held the grant of immunity at issue in that case, just as with section 513.380.2, was not coextensive with the Fifth Amendment privilege because " '[i]t could not[,] and would not[,] prevent the use of his testimony *to search out* other testimony to be used against him or his property.' " *Id., quoting Counselman v. Hitchcock*, 142 U.S. 547, 564, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) (emphasis added).

More than one-third of the states have enacted immunity statutes that mirror the language of 18 U.S.C. § 6002, explicitly stating that no testimony or other information directly or indirectly derived from compelled testimony may be used in a criminal case.[11] Other states have adopted statutes that are equally explicit in granting both use and derivative use immunity, with none holding that one is subsumed in the other. For example, the Kansas code expressly grants "use and derivative use immunity," meaning that "the state shall not use any testimony against such person provided under a grant of such immunity or any evidence derived from such testimony." KAN. STAT. ANN. § 22–3102.

An Oregon statute similarly provides for derivative use immunity by stating, "The testimony of the witness or evidence produced or information derived from the testimony or evidence may not be used against the witness in any criminal prosecution." OR. REV. STAT. *§ 136.619*. In Wisconsin, the legislature enacted a law providing immunity "from the use of compelled testimony or evidence . . . as well as immunity from the use of evidence derived from that compelled testimony or evidence." WIS. STAT. ANN. § 972.085.

Significantly, the language contained in section 513.380.2 in no way mirrors the language used in these statutes granting both use immunity and derivative use immunity. Section 513.380.2 does not state, for instance, that a prosecutor is precluded from using information *directly or indirectly* obtained by authorities as a result of a witness' compelled testimony. Nor does the statute prevent a prosecutor from using information *derived* from a witness' compelled testimony. The statute simply does not refer to derivative use of the information.[12]

Finally, the bank argues that section 513.380.2 nonetheless must grant a type of immunity greater in scope than use immunity because a statute providing merely for use immunity would be "ineffective" and "meaningless" because it would not supplant the privilege against self-incrimination fully. But, so long as it has a rational basis for its actions, it is not for this Court to second-guess the legislature's choice to grant less than derivative use immunity regarding testimony in debtor's examinations, any more than it is appropriate for this Court to question the legislature's choice to provide transactional rather than derivative use immunity in the other Missouri statutes quoted above, even though

11. *See* ARIZ. REV. STAT. ANN. § 13–4064; ARK. CODE ANN. § 16–43–603; CAL.PENAL CODE § 1324; COLO.REV.STAT. § 13–90–118; GA.CODE ANN. § 24–9–28; IDAHO CODE ANN. § 19–1114; LA.CODE CRIM. PROC. ANN. ART 439.1; MD.CODE ANN. CTS & JUD PROC. § 9–123; MICH. COMP. LAWS § 767.19b; MINN.STAT. § 609.09; MONT.CODE ANN. § 46–15–331; NEB.REV.STAT. § 29–2011.02; NH REV. STAT. ANN. § 516:34; N.C. GEN.STAT. § 15A–1051; ND CENT.CODE § 31–01–09; 42 PA. STAT. ANN. § 5947; S.D. CODIFIED LAWS § 23A–14–29; UTAH CODE ANN. § 77–22b–1; 12 VT. STAT. ANN. § 1664.

12. Some case discussions of immunity concepts can tend to use the shorthand term "use immunity" to encompass both types of use immunity discussed in *Kastigar* and to explain why no judicial immunity is available in that state absent statutory authorization of the right to grant immunity, *see, e.g., People v. Hunter,* 49 Cal.3d 957, 264 Cal.Rptr. 367, 782 P.2d 608 (1990), or why use immunity under federal law must include derivative use immunity. But *Kastigar,* of course, clearly distinguishes among the three types of immunity, as discussed above. *But see Lucky v. State,* 105 Nev. 807, 783 P.2d 457 (1989) (holding that an immunity statute stating that compelled "testimony shall not afterward be used against the person testifying" granted both use and derivative use immunity because "[t]o hold otherwise would have rendered the statute unconstitutional").

transactional immunity is not required to overcome the privilege.

Here, the legislature's decision to permit only a functionally narrow grant of use immunity in section 513.280.2 is not without rational basis when one considers that it applies only to the grant of immunity in aid of a purely civil proceeding—a civil judgment debtor's examination. The legislature might well have believed that the policy of aiding in the attempt to locate property through use of debtor's examinations is a good one, yet it might not have wished for proceedings in these civil matters to limit potential options for future criminal prosecutions should it later be discovered that the actions that led to the hiding of property sought in such examinations were themselves fraudulent or indicative of even more serious criminal activity. Indeed, prosecutors could use the transactional immunity mechanism provided for in section 491.205 to provide full immunity from prosecution for such persons in a criminal prosecution setting in return for their testimony; if transactional immunity already had been provided in a debtor's examination, that tool no longer would be available.

Perhaps this is why some other states have adopted similarly functionally narrow use immunity statutes rather than use immunity *and* derivative use immunity statutes when dealing with grants of immunity in narrow non-criminal situations. The Oklahoma legislature has enacted a statute, for example, providing mere "use immunity for a parent or legal guardian for in-court testimony" in proceedings taking place under that state's juvenile code. Okla. Stat. tit. 10A, § 1–4–508 (further stating that "[t]he in-court testimony of an immunized parent or legal guardian shall not be used against that [person] in a criminal prosecution").

Similarly, the New Jersey code contains a statute entitled "use immunity," which provides that witnesses may be compelled to testify before the state's department of personnel, "but an answer shall not be used or admitted in any proceeding against the person." N.J. STAT. ANN. § 11A:2–17. In limiting the provision of use immunity to civil judgment debtor's examinations, the Missouri General Assembly has acted consistently with these states in providing only limited immunity in functionally narrow civil proceedings.

In sum, the unique wording of the final phrase of section 513.380.2 does not transform the statute's explicit grant of use immunity into a grant of transactional or derivative use immunity. The legislature knew how to grant transactional immunity when it wished to do so, yet section 513.380.2 did not use the language the Missouri legislature has chosen to use when providing for transactional immunity. Nor does the statute use the language other state and federal statutes utilize in providing for derivative use immunity. Instead, the plain language of section 513.380.2 states just what it provides—use immunity alone.

The United States Supreme Court explicitly has held that the grant of use immunity is insufficient to overcome a witness' invocation of the privilege against self-incrimination. Use immunity is all that was granted here under section 513.380.2 in aid of the debtor's examination, and that is all that the prosecutor had authority to grant under that statute.

## IV. CONCLUSION

The trial court abused its discretion in ordering the Nothums to testify. Although the Nothums were granted immunity pursuant to section 513.280, that statute provides only use immunity, a type of immunity that is not coextensive in scope

with a witness' constitutional privilege against self-incrimination.

Accordingly, the grant of this limited form of immunity was insufficient to supplant their invocation of their right against self-incrimination, and the trial court had no authority to compel them to testify. As such, this Court issues a permanent writ of prohibition.

TEITELMAN, C.J., and MILLER and DEL MURO, Sp.JJ., concur.

FISCHER, J., dissents in separate opinion filed; RUSSELL and BRECKENRIDGE, JJ., concur in opinion of FISCHER, J.

DRAPER and PRICE, JJ., not participating.

ZEL M. FISCHER, Judge, dissenting.

The majority opinion holds that § 513.380, RSMo 2000, provides only "use immunity" and that "there is no evidence that the Missouri legislature intended by its use to convert the statute's express grant of authority to provide use immunity into an implied grant of authority to provide transactional immunity," "nor does the statute use the language other state and federal statutes utilize in providing for derivative use immunity." Op. at 565–66, 569.

I respectfully dissent because I would look at every word in the sentence defining the immunity to determine the scope of the immunity the legislature actually intended to authorize, and further, I believe the plain language of § 513.380.2 reflects the legislature's intent to create what the circuit court specifically categorized as the "broadest immunity possible." Further, the phrase "use immunity" generally is understood by standard and reliable sources to include what the majority opinion separately categorizes as "derivative use immunity."

A letter signed by an assistant prosecuting attorney, pursuant to the authority granted by § 513.380.2, purported to give David M. Nothum and Glenette Nothum "use immunity for any statement made at any judgment debtor's examination conducted pursuant to Section 513.380 ... when such statement is reasonably related to any question directed to the existence and location of any assets, liabilities, or sources of income of David M. Nothum and Glenette Nothum." Mr. Nothum asserted his privilege against self-incrimination under the United States and Missouri constitutions, and Mrs. Nothum's attorney represented to the court that she also intended to assert her privilege against self-incrimination.

The letter from the assistant prosecutor was produced, and the circuit court ordered the Nothums to respond to the inquiries of Arizona Bank and Trust, which had a judgment against the Nothums in the amount of $3,117,160.52. A writ was issued by the court of appeals prohibiting the circuit court from enforcing its order. *State ex rel. Nothum v. Kintz*, 333 S.W.3d 512 (Mo.App.2011). Subsequently the circuit court determined, in what it denoted as an order, that "[w]hile the statute denominates the immunity as the limited 'use immunity,' the court concludes that the legislature intended to grant a judgment debtor the broader 'transactional immunity' by expressly shielding such individual from 'any offense related to the content of the statements made.'" In what the circuit court denoted the actual "Order[s] of Contempt," the circuit court determined § 513.380 "provides the broadest immunity possible and protects [Nothums] from the possibility [they] could incriminate [themselves]."

The circuit court again ordered the Nothums to answer the questions posed by the bank to locate assets to satisfy the lawful judgment. The Nothums continued to assert their privilege against self-incrimination. The circuit court entered orders of contempt against the Nothums as authorized by § 513.380, which allows a circuit court to hold a judgment debtor in contempt if he or she continues to refuse to answer questions related to the collection of the judgment after a grant of immunity from prosecution. The court of appeals issued a preliminary writ of prohibition and transferred the case to this Court after opinion pursuant to Rule 83.02.

### Standard of Review

A writ of prohibition prevents "usurpation of judicial power." *State ex rel. Eggers v. Enright*, 609 S.W.2d 381, 382 (Mo. banc 1980). It is neither a substitute for appeal nor "a remedy for all legal difficulties." *Id.* "Prohibition will not be granted except when usurpation of a jurisdiction or an act in excess of the same is clearly evident." *Id.*

### Prohibition is Not Appropriate in This Case

Prohibition is not appropriate because civil contempt cases are subject to appeal, and, in this case, an appeal bond has already been set by the circuit court. There is no question that the proper review of a judgment of civil contempt is through an appeal of the judgment and not through seeking and obtaining an extraordinary writ of prohibition. *Carothers v. Carothers*, 337 S.W.3d 21, 25 (Mo. banc 2011). In *Carothers*, the majority of this Court even departed from the traditional rule that the time to appeal does not begin to run until

the judgment of contempt is enforced by incarceration of the contemnor. *Id.; id.* at 27–28 (Fischer, J. concurring).

In this case, the circuit court entered two orders and two orders of contempt on October 4, 2011.[1] The orders, in pertinent part, provide as follows:

Order of Contempt, October 4, 2011:

1. After finding that the immunity granted by the St. Louis Count[y] Prosecuting Attorney under the provisions of Section 513.380 of the Revised Statutes of Missouri provides the broadest immunity possible and protects [the Nothums] from the possibility that [they] could incriminate [themselves] in response to the questions posed by Arizona Bank seeking information regarding [their] assets, and after being advised by counsel for [the Nothums] and [the Nothums] that [they] nevertheless still refuse[ ] to answer those questions, the Court finds [the Nothums] in contempt of court and issues a writ of attachment against [the Nothums].

Order, October 4, 2011:

5. This Court finds that the grant of immunity provided [the Nothums] protects [them] from any offense related to the content of the statement [they] may make during [their] judgment debtor examination. Section 513.380(2) R.S.Mo. expressly provides that:

> Any prosecuting attorney or circuit attorney may grant use immunity from prosecution to a judgment debtor for any statement made at a judgment debtor's examination conducted pursuant to subsection 1 of this section. Such use immunity from prosecution *shall protect such person from prosecution for any offense related*

---

1. The orders and orders of contempt for David and Glenette Nothum contained identical language except for the names of the parties and, in fact, used the male pronoun in Glenette's case.

*to the content of the statements made.* [Emphasis added].

While the statute denominates the immunity as the limited "use immunity," the court concludes that the legislature intended to grant such a judgment debtor the broader "transactional immunity" by expressly shielding such individual from any "offense related to the content of the statements made." *Id.*

6. Accordingly, the court determines that the grant of immunity extended to [the Nothums] by the Office of the St. Louis County Prosecuting Attorney pursuant to § 513.380 R.S.Mo. is coextensive with the Missouri and Federal constitutional privileges against self-incrimination and removes any possibility that statements made by [the Nothums] in response to any questions posed by Arizona Bank during [their] judgment debtor examination can be used to prosecute [them]. Both state and federal prosecutors are bound by this grant of immunity.

7. In light of the court's holding, [the Nothums are] ordered to again appear for a debtor's examination and answer the questions posed by counsel for Arizona Bank secure in the knowledge that the grant of immunity pursuant to § 513.380 R.S.Mo. is as broad as the law allows and, therefore, shields [them] from both federal and state prosecution for any criminal offense related to the content of [their] statements.

The circuit court set an appeal bond in the amount of the lawful, unsatisfied judgment obtained against the Nothums. Even if the circuit court misinterpreted the statute at issue in this case, which, in my view, it did not do, the proper remedy to review these orders is by filing an appeal. *Carothers* at 25; *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. banc 1976). As Judge Breckenridge's dissent in *State ex rel. C.F.*

*White Family Part. v. Roldan*, 271 S.W.3d 569, 577 (Mo. banc 2008), articulates, in a case in which the circuit court misapplied a statute, a writ of prohibition will issue only when the "circumstances fit within one of three categories." In my view, none of the three categories applies to this case. The majority opinion concludes that a writ is justified because the circuit court abused its discretion. Op. at 559–60.

The majority opinion relies solely on opinions of the court of appeals in support of its statement that a "writ of prohibition in these circumstances is especially appropriate [because] one may not appeal from [a judgment debtor's] examination." Op. at 561. The majority points out that it only addresses the special orders directing the Nothums to answer questions put to them at the judgment debtor's examination, and not the orders of contempt. However, those special orders alone do not confront the Nothums with irreparable harm warranting an extraordinary writ until orders of civil contempt have been issued and executed. The cases relied on by the majority opinion from the court of appeals are not controlling, did not involve a circuit court's interpretation of a statutory grant of immunity, and are distinguishable.

*Hill v. Kendrick*, 192 S.W.3d 719 (Mo. App.2006), did not deal with a debtor's examination, and the witness had not been granted immunity. The court of appeals held that the State had failed to rebut the presumption that the answers would tend to incriminate the witness and pointed out "[t]he burden is on the petitioning party to show that the trial court exceeded its jurisdiction, and that burden includes overcoming the presumption in favor of the trial court's ruling." *Id.* at 720 (internal citation omitted).

*State ex rel. Heidelberg v. Holden*, 98 S.W.3d 116 (Mo.App.2003), involved the

grant of immunity by the prosecuting attorney that was limited not only by scope but additionally by time. It did not involve the circuit court's interpretation of § 513.380. "Because Plaintiff presented no evidence to rebut [the presumption that Relators' answers would tend to incriminate them] and because the court did not make any findings that the answers could not possibly have the tendency to incriminate Relators, in the absence of the grant of immunity, the trial court exceeded its jurisdiction." *Id.* at 120.

Likewise, *State ex rel. Long v. Askren,* 874 S.W.2d 466 (Mo.App.1994), did not deal with a circuit court's interpretation of a statute. Instead, the court of appeals held that "[t]he creditors do not present specific questions which were asked Mr. Long at the debtor's examination to which Mr. Long waived his constitutional privilege against self-incrimination and to which they were entitled to an answer." *Id.* at 473. "The trial court could not have determined, as a matter of law, the impossibility of Mr. Long's answers to the questions asked him during the debtor's examination to tend to incriminate him." *Id.*

While it is true that no appeal lies from a judgment debtor's examination, this case involves this Court's review of an order of civil contempt in which the sole issue to be determined is one of statutory interpretation. A circuit court's determination that a grant of immunity is sufficient to overcome the privilege against self-incrimination does not warrant an extraordinary writ before it has resulted in an order of civil contempt. An appeal provides the appropriate remedy to address such an order of civil contempt before this Court in this case. Requiring judgment debtors to make the choice, between answering questions posed to them at an examination or appealing the order once the threat of incarceration for contempt has been car-

ried out, preserves the circuit court's "right to resort to means competent to compel the production of ... testimony," without which the purpose and effectiveness of judgment debtor's examinations is greatly reduced. *State ex rel. Rowland Group, Inc. v. Koehr,* 831 S.W.2d 930, 932 (Mo. banc 1992).

The majority opinion merely construes the statute differently from the circuit court and then goes further to hold the circuit court's construction of this fairly new statute, that has not been interpreted by the court of appeals, constitutes such an "abuse of discretion" to justify issuing a writ of prohibition. The fact that this case concerns the Fifth Amendment right against self-incrimination does not change the definition of "abuse of discretion." A circuit court's ruling is considered an "abuse of discretion" in the context of an extraordinary writ request "when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *In re Spencer,* 123 S.W.3d 166, 167 (Mo. banc 2003). Even if the slim majority in this case is correct in its determination that the circuit court misinterpreted the statute, it certainly has not been demonstrated by the majority opinion to have been without careful consideration. Therefore, the Nothums should be required to proceed with the standard adequate remedy of appeal, particularly when an appeal bond has already been set.

### The Statutory Immunity is Broad Enough to Compel Testimony

"The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *State ex rel. Burns v. Whitting-*

*ton,* 219 S.W.3d 224, 225 (Mo. banc 2007). It is a well-established principle that, "[i]n absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." *State v. Oliver,* 293 S.W.3d 437, 446 (Mo. banc 2009).

Section 513.380.2 provides, in the relevant part:

> 2. Any prosecuting attorney or circuit attorney may grant use immunity from prosecution to a judgment debtor for any statement made at a judgment debtor's examination conducted pursuant to subsection 1 of this section. *Such use immunity from prosecution shall protect such person from prosecution for any offense related to the content of the statements made.*

(Emphasis added). The language of this statute does contain the phrase "use immunity," but it also tracks the language this Court used to describe "transactional immunity" in *State ex rel. Munn v. McKelvey,* 733 S.W.2d 765 (Mo. banc 1987). "Transactional immunity is broader in that it is 'full immunity from prosecution for the offense to which the compelled testimony relates.'" *Id.* at 769 n. 2 (quoting *Kastigar v. United States,* 406 U.S. 441, 452–53, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). This Court has also defined "use and derivative use immunity" as "immunity from the use of compelled testimony and evidence derived therefrom[.]" *Id.*

The issue to be decided in this case is how to interpret the scope of the immunity authorized by § 513.380.2 when it contains the phrase "use immunity" and expressly provides a judgment debtor has "immunity from prosecution for any offense related to the content of the statement made" at the debtor's examination.

"Use immunity" and what the majority opinion categorizes as "derivative use immunity" may not always protect a witness from *prosecution* for *offenses* related to the substance of the testimony in that they only protect that witness from the use of the testimony itself or evidence derived from that testimony in a criminal prosecution against that witness. *See Munn,* 733 S.W.2d at 769 n. 2 (citing *Kastigar,* 406 U.S. at 452–53, 92 S.Ct. 1653); *see also Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 475–76, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). However, by its plain language, § 513.380.2 specifically provides broad protection against "prosecution for any offense related to the content of the statements made" at the judgment debtors examination. Section 513.380.2 expressly does not limit the scope of its immunity to merely "the content of the statements made" but, in fact, expressly expands the use immunity granted pursuant to this section by the prosecuting attorney to protect from the "prosecution for any offense related to" that testimony.

I agree with the majority that the granting of "use" and "derivative use" immunity may be sufficient to compel testimony over a claim of the privilege against self-incrimination. Op. at 562–63. The majority opinion dismisses the notion that "use immunity" as used in § 513.380.2 includes the so-called "derivative [use] immunity" because it found that *Kastigar,* in interpreting a federal immunity statute, and other statutes of "sister states" use the language "derivative" in the statute. Op. at 567. The majority claims, therefore, that if the Missouri legislature had wanted to grant the broader protections of "derivative immunity" in § 513.380.2, it could have mirrored the language of the federal statute as other states did. *Id.* The majority concedes, however, that such language is not required for the term "use immunity" to include "derivative [use] immunity." Op. at 567 n. 10 (citing *People v. Hunter,*

49 Cal.3d 957, 264 Cal.Rptr. 367, 782 P.2d 608 (1990), and *Lucky v. State*, 105 Nev. 807, 783 P.2d 457 (1989)). This Court in *Munn* lumped "use and derivative use" together in its definition, separating them only from "transactional immunity." 733 S.W.2d at 769 n. 2. Further, absent a statutory definition, words are to be given their plain and ordinary meaning as derived from the dictionary. *Oliver*, 293 S.W.3d at 446.

If this Court were to presuppose a particular legal meaning for the phrase "use immunity," a standard and reliable source for determining the meaning of legal terms is Black's Law Dictionary. Black's Law Dictionary, which includes 19 different types of immunity in its definition of "immunity," does not include a separate definition of an immunity known as "derivative immunity." *See* BLACK'S LAW DICTIONARY 330–31 (2d pocket ed. 2009). The "immunity" definition of Black's Law Dictionary separates the types of immunity into different sections. The section dealing with "criminal law" reads as follows:

> 3. *Criminal law.* Freedom from prosecution granted by the government in exchange for the person's testimony. • By granting immunity, the government can compel testimony—despite the Fifth Amendment right against self-incrimination—because that testimony can no longer incriminate the witness.
>
>> *pocket immunity.* Immunity that results from the prosecutor's decision not to prosecute, instead of from a formal grant of immunity.
>>
>> *testimonial immunity.* Immunity from the use of compelled testimony against the witness. • Any information derived from that testimony, however, is generally admissible against the witness.
>>
>> *transactional immunity.* Immunity from prosecution for any event or

transaction described in the compelled testimony. • This is the broadest form of immunity.

> *use immunity.* Immunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness. • After granting use immunity, the government can still prosecute if it shows that its evidence comes from a legitimate independent source.

*Id.* Other standard reliable reference sources do not distinguish between "use" and "derivative use" immunity. *See, e.g.,* 22 C.J.S. *Criminal Law* § 98 (" 'use immunity' or 'derivative use immunity' describes an agreement not to utilize particular testimony, as well as evidence gathered as a result of that testimony, in any later prosecution of the witness.").

No Missouri statute expressly differentiates between "use" and "derivative use" immunity. This Court has not previously determined that the phrase "use immunity" is not coextensive with the phrase "derivative use immunity." The Court in *Munn* did not address the issue of whether a state statute purporting to grant "use immunity" involved the grant of a separate immunity categorized as "derivative use immunity." *See generally Munn*, 733 S.W.2d 765. In *Munn*, this Court addressed three questions, none of which is applicable in this case. *Id.* The Court held that: 1) authority to grant immunity was not inherent in the office of Missouri prosecutors, but that authority was authorized by statute; 2) the doctrine of equitable immunity did not apply when there was no reliance on the promise of immunity and the witness refused to even accept the unauthorized offer of immunity; and 3) even if a federal prosecutor had inherent authority to grant federal immunity, federal immunity alone is insufficient to protect

the witness's privilege against self-incrimination in a state prosecution. *Id.*

The United States Supreme Court in *Kastigar* dealt with a federal immunity statute worded differently from the Missouri statute at issue in this case. 406 U.S. at 441, 92 S.Ct. 1653; 18 U.S.C.A. § 6002. Some federal courts, since *Kastigar,* have held "use immunity" and "derivative use immunity" indistinguishable from one another in federal law. *See, e.g., United States v. Plummer,* 941 F.2d 799, 805 (9th Cir.1991) ("We have found only one case that meaningfully distinguishes between use and derivative use in an informal immunity agreement between the government and a defendant.... Use immunity presumptively includes derivative use immunity, unless the government can demonstrate in a given case that, at the time the agreement was made, it expressly clarified that only direct use immunity was offered."). *Kastigar*'s holding makes clear that, for a grant of immunity to adequately protect a witness' privilege against self-incrimination, "[i]mmunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords" sufficient protection against a witness being "forced to give testimony leading to the infliction of penalties affixed to ... criminal acts." 406 U.S. at 453, 92 S.Ct. 1653 (internal quotations and citations omitted).

"When interpreting statutes, courts do not presume that the legislature has enacted a meaningless provision." *Edwards v. Gerstein,* 237 S.W.3d 580, 581 (Mo. banc 2007). Given that anything less than "use immunity," as defined in Blacks Law Dictionary, that coextensively protects a witness from the use of compelled testimony or any information derived from that testimony, would not satisfy a witness' privilege against self-incrimination and given the presumption that the legislature knows the existing law when enacting a piece of legislation, it does not seem reasonable for this Court to interpret the immunity authorized by § 513.380.2 in a manner that would not require a judgment debtor to respond to questions concerning the location of assets to collect the judgment. Further, interpreting § 513.380.2 to authorize so-called "derivative use immunity" does not require this Court to add the word "derivative" to the statute but rather merely requires it to consider all the words of the statute, which, in fact, grants immunity "from prosecution for any offense related to the content of the statement" or consider the legislature referred to a standard law dictionary in drafting the statute. Additionally, this interpretation of § 513.380.2 is totally consistent with the legislative purpose in providing for a judgment debtor examination.

"The principal purpose of a judgment debtor examination is to discover assets, to compel the defendant in the execution to disclose under oath all the assets of his estate, and, after discovery, to authorize the court to say whether or not the debtor has assets that may be levied on by execution in favor of the judgment debtor." *Rowland,* 831 S.W.2d at 932. "A related purpose is to disclose fraudulently concealed property so that it may properly be subjected to the payment of a just debt." *Id.* Section 513.380.2 does not limit its grant of immunity to "testimonial immunity" but provides for broader immunity, in fact so broad that if granted by a prosecuting attorney, it "shall protect such person from prosecution for any offense related to the content of the statements made." "[A]ny offense related to the content" of the testimony demonstrates the legislature's intent to make "such use immunity" broad enough to clearly include "derivative use immunity" and reasonably could be construed to include "transactional immunity." To quote the circuit court, "[§]

513.380 of the Revised Statutes of Missouri provides the broadest immunity possible and protects [the Nothums] from the possibility that [they] could incriminate [themselves] in response to the questions posed by Arizona Bank seeking information regarding [their] assets . . . ."

When interpreting statutory law, the Court must ascertain the intent of the legislature and give effect to that intent if possible. *Greenlee v. Dukes Plastering Serv.,* 75 S.W.3d 273, 276 (Mo. banc 2002). "The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and to give meaning to the statutes." *Lewis v. Gibbons,* 80 S.W.3d 461, 465 (Mo. banc 2002). The majority opinion's interpretation of § 513.380 eviscerates the use of a debtor's examination. Simply because the legislature, in enacting § 513.380.2, did not mimic other state statutes specifically articulating derivative use immunity or transactional immunity as categories of immunity it authorized the prosecuting attorney to have the discretion to grant, this ought not to result in an interpretation of the statute that frustrates its purpose.

## CONCLUSION

Because the ordinary appellate review of a contempt order is by appeal and because the request of an extraordinary writ is based on the premise that the circuit court's statutory interpretation is an "abuse of discretion," I would deny the request for a writ of prohibition in this case even if I thought the circuit court misinterpreted § 513.380.

However, the circuit court applied a reasonable interpretation based on the common definition of undefined terms used in the statute, which was consistent with the clear legislative intent to authorize sufficient immunity to require a judgment debtor to respond to questions to assist in the collection of a lawful debt. In my view, the circuit court did not abuse its discretion when it held "that the immunity granted by the St. Louis Count[y] Prosecuting Attorney under the provisions of Section 513.380 of the Revised Statutes of Missouri provides the broadest immunity possible and protects [the Nothums] from the possibility that [they] could incriminate [themselves] in response to the questions posed by Arizona Bank seeking information regarding [their] assets . . . ." Even if this issue of law were presented to this Court for review on appeal subject to *de novo* review, rather than a request for an extraordinary writ subject to abuse of discretion review, in my view, the scope of the immunity authorized is "the broadest immunity possible" and, therefore, sufficient to afford the protection of the right against self-incrimination. I would quash the preliminary writ of prohibition.

T.T., Respondent,